IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30862
_____


FELTON DOMINIQUE, SR., ET AL

Plaintiffs,

v.

GEORGIA GULF CORPORATION, ET AL

Defendants

------------------------------

BORIS F NAVRATIL

Movant - Appellant
_____

Appeal from the United States District Court
for the Middle District of Louisiana
(95-CV-72)
_____

February 27, 1996

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Boris F. Navratil appeals the order holding him in contempt of court under Rule 16(f) of the Federal Rules of Civil Procedure for failing to comply with an order of the district court pertaining to submission of a joint status report. For the reasons assigned, we vacate and remand.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Boris F. Navratil represents Georgia Gulf Corporation ("Georgia Gulf") in a personal injury suit filed against it by Felton Dominique and Sucelia Dominique in the Eighteenth Judicial District Court of the Parish of Iberville, Louisiana. Upon motion of Georgia Gulf, the suit was removed to the United States District Court for the Middle District of Louisiana, which possessed subject matter jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332.

The magistrate judge assigned to the case issued an order setting a date for a status conference and directing John McClindon, counsel for the Dominiques, to file a joint status report on the case. McClindon filed the report in a timely fashion, and the status conference was held as scheduled.

On May 11, 1995, the case was reassigned to District Judge Tucker L. Melançon, a visiting judge from the Western District of Louisiana, Monroe Division. On May 19, 1995, Judge Melançon issued an order entitled "Attention Attorneys," to which a scheduling order was attached. The scheduling order required a joint meeting of the parties by June 16, 1995, and the submission of a joint status report to Judge Melançon by June 26, 1995. The instructions accompanying that scheduling order required that the status report address all matters outlined in a form joint status report attached to the scheduling order, and that the status report follow the same format as the form joint status report. The instructions also stated that the attorneys of record were

2

jointly responsible for the submission of the status report, and the "Attention Attorneys" order stated that a failure to submit a report in compliance with the instructions would "invite the imposition of the sanctions authorized by F.R. Civ.P. 16(f) or such other sanctions as the court deems appropriate."

The instructions accompanying the scheduling order also stated in pertinent part that

> [c]ompliance with [instructions regarding the initial exchange of witness and exhibit lists, the joint meeting of the parties, and the submission of the joint status report] is required only in connection with the First Scheduling Order. Repetitive compliance with [these instructions] is not required.

In response to the scheduling order, McClindon mailed to Judge Melançon a copy of the joint status report previously submitted to the magistrate judge along with a letter updating developments between the parties. However, the previously submitted joint status report and the letter did not contain all of the information included in the form status report attached to Judge Melançon's scheduling order.

Judge Melançon subsequently made a minute entry ordering the attorneys to submit a joint status report in compliance with the instructions accompanying the scheduling order by July 19, 1995. The order also required the attorneys to submit memoranda explaining their noncompliance with the scheduling order and to appear before the court on July 21, 1995, and show cause why they should not be sanctioned for failure to comply with the pretrial order requiring the filing of the joint status report.

3

Both attorneys timely submitted the memoranda required by the show-cause order, and McClindon submitted a Joint Status Report complying with the content requirements of the instructions accompanying the scheduling order on July 14, 1995. Navratil's memorandum explained that he considered the "legality and efficacy of [the scheduling order to be] in serious doubt" because the scheduling order was signed by a deputy clerk for the Western District of Louisiana. Navratil contended that, under Middle District rules, deputy clerks lack the authority to issue scheduling orders. Additionally, Navratil's memorandum stated that he and McClindon believed that the submission of an entirely new status report would have constituted a repetitive compliance not required by the instructions accompanying the scheduling order.

On July 21, 1995, both attorneys appeared at the United States District Court House at Baton Rouge for the show-cause hearing, and were informed by the clerk that Judge Melançon was not there. After reaching Judge Melançon in his chambers in Monroe, the clerk related to the attorneys Judge Melançon's verbal order that they appear before him at the Monroe courthouse on July 28, 1995.

Navratil filed an application with this court for a writ of mandamus, seeking to have the verbal order set aside. The application was denied. Judge Melançon subsequently modified his verbal order and rescheduled the show-cause hearing for August 11, 1995, in Baton Rouge.

The show-cause hearing took place as scheduled on August 11. After questioning both attorneys at length about the contents of the memoranda that they had submitted pursuant to the show-cause order, Judge Melançon entered a judgment of contempt against Navratil and imposed a fine of $250. Navratil appeals the contempt judgment and fine.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a contempt order for abuse of discretion, and we review the district court's underlying factual findings under the clearly erroneous standard. Martin v. Trinity Indus., Inc., 959 F.2d 45, 46-47 (5th Cir 1992).

### B. JURISDICTION

We must first determine whether this court possesses jurisdiction over the instant appeal. Vincent v. Consol. Operating Co., 17 F.3d 782, 785 (5th Cir. 1994). Jurisdiction of this appeal hinges upon whether Judge Melançon's contempt order was civil or criminal in nature. "Ordinarily civil contempt orders are not viewed as final, appealable orders under 28 U.S.C. § 1291." Lamar Fin. Corp. v. Adams, 918 F.2d 564, 566 (5th Cir. 1990). However, criminal contempt orders are considered final, and are thus immediately appealable. Id. When a contempt order is partially civil and partially criminal in nature, it is

5

classified as criminal for purposes of determining the appropriateness of appellate review.  Id. at 567.

Whether a contempt order is civil or criminal in nature depends upon the primary purpose of the sanction that it carries. Id. at 566.  "If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil."  Id.; see also International Union, UMWA v. Bagwell, 114 S. Ct. 2552, 2558 (1994).  "If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal."  Lamar Fin. Corp., 918 F.2d at 566.  "[A] `flat, unconditional fine' totalling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." International Union, 114 S. Ct. at 2558.

In this case, the fine imposed by Judge Melançon contained no indicia of a coercive or compensatory purpose.  Payment of the fine was not conditioned in any way on Navratil's future conduct. No further act of compliance on the part of Navratil was necessary because a joint status report containing all of the information that Judge Melançon required had been submitted before the entry of the contempt order.

Furthermore, the fine was paid into the court, and thus was not compensatory in nature.  Judge Melançon made no findings of fact regarding any expenses incurred by the court as a result of

Navratil's noncompliance with the scheduling order. Indeed, a requirement that the fine be paid to McClindon or the Dominiques would not have rendered it compensatory because the fine would have in no way compensated the party to whom it was paid for any loss occasioned by Navratil's noncompliance. The instructions accompanying the scheduling order indicated that both attorneys were jointly responsible for submitting the status report. McClindon had failed to comply with the scheduling order to the same extent as Navratil, and thus had suffered no loss attributable to Navratil's noncompliance.

The absence of a coercive or compensatory purpose indicates that the purpose of the fine accompanying the contempt order was purely punitive, rendering the contempt order criminal in nature, and thus, immediately appealable. Having established that we possess jurisdiction over this appeal, we turn to the merits of Navratil's claims.

### C. THE LEGITIMACY OF THE CONTEMPT ORDER

Navratil contends that the contempt order is both procedurally and substantively defective. He contends that the order is procedurally improper because (1) the court failed to provide him with adequate notice of the criminal nature of the show-cause hearing, (2) the court failed to allow Navratil to exercise his rights to counsel and to call witnesses on his behalf, and (3) Judge Melançon declined to recuse himself from presiding over the contempt hearing. Navratil also contends that

7

the contempt order is substantively flawed because (1) the scheduling order was ambiguous, and (2) the scheduling order failed to comply with the Federal Rules of Civil Procedure and applicable local rules.

### 1. Procedural Claims

The contempt order is procedurally flawed on a number of grounds. First, the district court's show-cause order failed to provide Navratil with sufficient notice to apprise him of the fact that the show-cause hearing was in actuality a criminal contempt hearing.

Rule 42(b) of the Federal Rules of Criminal Procedure provides in relevant part that

> [a] criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.

FED R. CRIM. P. 42(b). The requirement that the notice describe the criminal contempt as such "is intended to obviate the frequent confusion between criminal and civil contempt proceedings . . . ." FED. R. CRIM. P. 42 advisory committee's note.

Adequate notice that a hearing contemplates criminal contempt does not necessarily require use of the term "criminal contempt." Hopkins v. Jarvis, 648 F.2d 981, 985 (5th Cir. Unit B 1981). However, the notice must at least "insure a realization by contemnors that a prosecution for criminal contempt is

8

contemplated." United States v. United Mine Workers, 330 U.S. 258, 298 (1947).

In American Airlines, Inc. v. Allied Pilots Ass'n, 968 F.2d 523 (5th Cir. 1992), this court recognized that an order instructing a party to show cause why he should not be held in contempt may provide adequate notice that the contempt contemplated is criminal in the absence of an express reference to the criminal nature of the contempt charged. Id. at 530-31. In that case, the contemptuous behavior charged -- submission of unsigned declarations -- was of a type that could not be remedied by any means other than punitive sanctions, thus indicating that the contempt charged had to be criminal rather than civil in nature. Id. at 531. However, the show-cause order contained the word "contempt," which allowed the noticed party to determine by process of elimination that the contempt charged was criminal based on the fact that the contemptuous conduct in question could not have been alleviated through coercive or compensatory sanctions. Id. at 526.

In this case, the district court's show-cause order in no way indicated that the court was contemplating holding counsel in contempt, either civil or criminal. It merely apprised the attorneys of an opportunity to "show cause why they should not be sanctioned."

Rule 16(f) of the Federal Rules of Civil Procedure provides that judges may impose a large variety of sanctions for violation of a pretrial order, including, among others, striking pleadings,

9

evidentiary limitation, payment of attorney's fees, and contempt. FED. R. CIV. P. 16(f). Given this broad array of potential sanctions available to the district court, the purposes behind the notice provision of FED. R. CRIM. P. 42(b) could only be served by a notice indicating that the court was specifically contemplating contempt rather than some other sanction. In the absence of a reference to contempt in the show-cause order, the individual facing sanctions could not know that he faced a contempt order, much less a criminal contempt order. Because the district court's show-cause order provided no such indication, it failed to meet the notice requirement of Rule 42(b).

The contempt proceeding failed to meet other procedural due process requirements as well. Except in the case of summary contempt, which is limited to a narrowly defined range of contempt that occurs in open court, defendants in criminal contempt actions possess a right to counsel and a right to call witnesses on their behalf. In re Stewart, 571 F.2d 958, 964 (5th Cir. 1978) (citing In re Oliver, 333 U.S. 257, 275 (1948)). In this case, Navratil never had a meaningful opportunity to exercise these rights because he had no way of knowing that the show-cause hearing involved criminal contempt until the moment that the district court pronounced him in contempt of court.

Additionally, the contempt proceeding was procedurally suspect because Judge Melançon both prosecuted and presided over the proceeding. The assumption of both roles is improper because

10

it denies the defendant in the criminal contempt proceeding an impartial decision maker. American Airlines, 968 F.2d at 531.

In American Airlines, this court held that a district court judge improperly served the dual function of judge and prosecutor in a criminal contempt proceeding based on the following acts on the part of the judge in the proceeding:

> First, the judge recited the facts from his memory and as he had been able to reconstruct them from reviewing the files and talking to his staff. The attorneys were then invited to respond to his statement. . . . At various points during each attorney's statement, the judge interrupted and asked questions about the facts and the attorney's intent and understanding regarding what had transpired.

Id. at 526. In this case, Judge Melançon conducted the show-cause hearing in a substantially similar manner. Judge Melançon's assumption of a dual role of prosecutor and judge thus rendered the contempt proceeding procedurally improper.

Finally, Navratil argues that Judge Melançon was obliged to recuse himself from presiding over the contempt hearing by Rule 42(b). Rule 42(b) provides that "[i]f the contempt charged involves disrespect to or criticism of a judge, the judge is disqualified from presiding at the trial or hearing except with the defendant's consent." FED. R. CRIM. P. 42(b). Navratil claims that Judge Melançon held him in contempt because he was personally offended either by Navratil's questioning of the legality of the scheduling order or by his filing an application for writ of mandamus. Navratil contends that the fact that he was sanctioned and that McClindon was not, even though both had violated the scheduling order, demonstrates that he was held in

contempt for what Judge Melançon considered to be criticism or disrespect.

We find Navratil's last argument to be without merit. Failure to follow a court order requiring a party to submit a document to court is simply not the sort of contemptuous activity that involves the disrespect or criticism of a judge contemplated by Rule 42(b).  See Goldfine v. United States, 268 F.2d 941 (1st Cir. 1959) (holding that a district judge was not required to recuse himself from a contempt hearing based upon a party's violation of a court order to produce corporate records), cert. denied, 363 U.S. 482 (1960).  Moreover, while we find Judge Melançon's differential treatment of the attorneys puzzling, "[w]e cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions."  Ungar v. Sarafite, 376 U.S. 575, 584 (1964).  Therefore, Judge Melançon was not obliged to recuse himself from presiding over the contempt hearing.

Because the contempt order was procedurally flawed in that Navratil was denied (1) his rights to counsel and to call witnesses, (2) his right to adequate notice of the nature of the contempt proceeding, and (3) his right to an impartial decision maker by virtue of Judge Melançon's improper assumption of the dual role of prosecutor and judge, we must vacate the order.

12

## 2. Substantive Claims

Because of double jeopardy concerns, we consider Navratil's substantive attacks on the contempt proceeding. See United States v. Miller, 952 F.2d 866, 871 (5th Cir.) (noting that a finding of insufficiency of the evidence is tantamount to an acquittal, and thus bars reprosecution for the same offense), cert. denied, 505 U.S. 1220 (1992). Navratil contends that, as a matter of law, no basis existed upon which the district court could validly hold him in contempt.

Navratil argues first that the contempt order was improper because the scheduling order was ambiguous. 18 U.S.C. § 401(3) states that a party may be held in contempt of court for "[d]isobedience or resistance to [the court's] lawful writ, process, order, rule, decree, or command." A finding of contempt under this provision requires proof beyond a reasonable doubt that (1) the order in question is reasonably specific, (2) the party violated the order, and (3) the party had a willful intent to violate the order. In re Hipp, Inc., 5 F.3d 109, 112 (5th Cir. 1993). In the context of criminal contempt, willfulness may be established by "behavior amounting to a reckless disregard for the administration of justice . . . ." United States v. Burstyn, 878 F.2d 1322, 1324 (11th Cir. 1989); see United States v. West, 21 F.3d 607, 608 (5th Cir. 1994) (noting that proof of a "`contemptuous act and a willful, contumacious, or reckless state of mind'" will support a conviction of criminal contempt).

Evidence of each of these three elements exists in this

13

case.  First, the instructions accompanying the scheduling order specifically state that

> [t]he Joint Status report shall address all matters outlined in the attached form Joint Status Report and shall follow the same format.

This language lacks any ambiguity.  Second, the order was violated because neither Navratil nor McClindon submitted a joint status report in compliance with the scheduling order instructions.  Third, during the show-cause hearing, Navratil admitted that he had not even read the form joint status report in order to determine whether the previously submitted status report complied with the form in content and format.  This conduct evidences a reckless state of mind in violating the court order.  Thus, the record indicates that sufficient evidence exists to support a conviction for criminal contempt.

Navratil also contends that the contempt order was substantively flawed because the scheduling order that he violated was itself illegal.  Navratil predicates this contention on two grounds: (1) the scheduling order violated the timing requirements of the Federal Rules of Civil Procedure, and (2) the scheduling order was signed by a Western District deputy clerk, a person without the authority to issue the order.  Both of these points lack merit.

Navratil relies upon Rule 16 of the Federal Rules of Civil Procedure to support the proposition that the scheduling order, which ordered the parties' submission of a joint status report,

14

was procedurally improper.  Rule 16 provides in pertinent part that

> the district judge, or a magistrate judge when authorized by district court rule, shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order . . . .

FED. R. CIV. P. 16(b).  Navratil contends that the scheduling order in this case, which contained the instructions relating to the submission of the joint status report, was procedurally invalid because it preceded the court's receipt of a Rule 26(f) report or a consultation with the parties.

Navratil and the other attorneys of record in the underlying cause had engaged in a status conference with the magistrate judge to whom the case was assigned prior to its transfer to Judge Melançon.  The correspondence between the magistrate and the attorneys satisfied any requirement of correspondence between judge and attorneys before the issuance of the scheduling order.

The primary purpose behind Rule 16(b) is "to encourage the early assertion of judicial control to ensure that the parties organize their cases and proceed as expeditiously as possible." WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1522.1 (West 1990).  Given that Rule 16(b)'s overriding purpose is the facilitation of judicial economy, a requirement that a judge to whom a case is transferred engage in correspondence with attorneys that merely repeats correspondence that has already occurred between the attorneys and the judge to whom the case was

15

initially assigned would undermine the purpose of Rule 16(b).

Next, Navratil contends that the fact that the scheduling order was signed by a deputy clerk renders it procedurally invalid. He points to no authority in support of this conclusion. Furthermore, the scheduling order was attached to the "Attention Attorneys" order, which was signed by Judge Melançon, and which plainly indicated that the scheduling order was issued at his direction. The actual signature on the scheduling order is thus entirely irrelevant to the validity of the order.

Because no substantive defect in the district court's criminal contempt order provides a basis for reversing the conviction and rendering judgment for Navratil, we do not foreclose the possibility of the district court pursuing the imposition of sanctions against Navratil in a manner consistent with this opinion.

## III. CONCLUSION

Because Navratil lacked adequate notice of the criminal contempt proceeding and was denied his right to call witnesses and retain counsel, and because Judge Melançon improperly assumed the dual role of prosecutor and judge in the contempt proceeding, we VACATE the order of the district court and REMAND the cause for further proceedings consistent with this opinion.

16