# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2011

No. 10-10350

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DONALD W. HILL, also known as Don Hill; RAY JACKSON,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CR-299

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Donald Hill and Ray Jackson appeal from their convictions for criminal contempt for violating a gag order. Both argue the evidence is insufficient.

We AFFIRM.

## STATEMENT OF FACTS

This contempt case arises from violations of a gag order entered in a high-profile criminal corruption case in Dallas, Texas. Donald Hill, a Dallas public official, was indicted for conspiracy to commit bribery, bribery, conspiracy to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

commit extortion, extortion, and conspiracy to commit money laundering. Hill was represented by Ray Jackson. Hill's wife was also a defendant in the case and was represented by Victor Vital.

There was extensive media attention given to the case. The district court became increasingly concerned over the effect pretrial publicity could have on the ability to select an impartial jury. The district court distributed a proposed gag order limiting extra-judicial statements. No party raised any objection or sought clarification. On June 12, 2009, ten days prior to the commencement of trial, the district court entered the order. The district court explained in the order its purpose. Specifically, the order was to protect the defendants' rights to a fair trial by an impartial jury. The order was binding on the defendants, the attorneys for the government and the defense, and all employees, representatives, and agents of the attorneys.

On June 18, four days before trial, Hill and Jackson participated in a television interview conducted by Gary Reaves, a local news station reporter. Ken Carter, the public relations representative for Hill, had arranged the interview. Before the interview, Jackson, Vital, and Carter discussed ground rules. Although the rules were not memorialized in writing, the rules purportedly prohibited Reaves from asking questions about the pending criminal case or about the Hills' personal lives. Reaves allegedly agreed to the rules.

During the interview, Hill made statements that Jackson suspected were in violation of the gag order. Jackson testified that he had become uncomfortable with the nature of the interview almost immediately, but he allowed the interview to continue. Jackson also was questioned and made statements regarding the case.

The district court was made aware of the interview through an internet service that ran automatic searches for press on the case. The court ordered the defendants, counsel, and public relations representative for the defendants to

No. 10-10350

appear the morning of the criminal trial for a hearing on possible violations of the gag order. Hill and Jackson were provided with notice of the criminal contempt charge at that hearing.

A one-day bench trial on the contempt charges was later conducted. Carter, Jackson, and Vital testified. The district court issued its Findings of Facts and Conclusions of Law. Hill and Jackson were found guilty of criminal contempt. Hill was sentenced to 30 days imprisonment and Jackson to a $5,000 fine and 120-day suspension from receiving any new criminal appointments in the Northern District of Texas. On appeal, both defendants challenge the sufficiency of the evidence.

## DISCUSSION

We review a district court's finding of guilt after a bench trial to determine whether the conviction is supported by substantial evidence. *United States v. Adams*, 174 F.3d 571, 578 (5th Cir. 1999). Where defendants have preserved a challenge to the sufficiency of the evidence, as Hill and Jackson have, we review the denial of a motion for judgment of acquittal *de novo*. *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998). We determine whether, when viewing the evidence in the light most favorable to the verdict, "a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000).

Two challenges are raised to the sufficiency of the evidence. The defendants contend that the gag order was not reasonably specific, and the government failed to prove their intent to violate the gag order. A criminal contempt conviction under 18 U.S.C. § 401(3) requires proof beyond a reasonable doubt that there was "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (citation omitted).

No. 10-10350

## I.  *Specificity of the Order*

We start with the relevant language of the gag order:

2.      No person covered by this order shall make any statement to members of any television, radio, newspaper, magazine, internet (including, but not limited to, bloggers), or other media organization about this case, other than matters of public record, that could interfere with a fair trial or otherwise prejudice Defendants, the Government, or the administration of justice. . . .

4.      Parties may discuss, without elaboration or any kind of characterization, information contained in the public record; scheduling information; and any discussion or order by the Court that is a matter of public record.

"Determining whether an order is specific requires a factual inquiry into the reasonableness of the order's specificity, given the context in which it was issued." *In re Hipp*, *Inc.*, 5 F.3d 109, 112 (5th Cir. 1993) (citation omitted).  The district court relied on precedents addressing restraints on out-of-court statements challenged as First Amendment violations.  We agree with the district court that those cases offer the best guidance for determining whether the gag order was reasonably specific.

We first discuss a United States Supreme Court case that held a Nevada attorney disciplinary rule governing pretrial publicity was void for vagueness. *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991).  In that case, a criminal defense attorney held a press conference and stated that the evidence would show his client's innocence, that a certain policeman was the likely perpetrator, and that the victims were not credible. *Id.* at 1045.  The Southern Nevada Disciplinary Board of the State Bar disciplined him for violating the state supreme court's rule governing attorneys' extra-judicial statements. *Id.* at 1033. The relevant portions of the rule provided that:

4

No. 10-10350

1.   A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding. . . .

3.   Notwithstanding subsection 1 . . ., a lawyer . . . may state without elaboration:
(a) the general nature of the claim or defense;
(b) the information contained in a public record. . . .

*Id.* at 1060-62.

The Supreme Court determined that this rule was void for vagueness because the "notwithstanding" language led the attorney to believe that statements falling under Rule 3 subsections (a) and (b) were acceptable even if the statements had a substantial likelihood of materially prejudicing a proceeding. *Id.* at 1048. Further, the ability to state the "general nature" of the claim "without elaboration" gave insufficient guidance as to what was prohibited. *Id.* at 1048-49.

Here, the defendants argue that the gag order is similar to the one in *Gentile* in that it failed to provide sufficient guidance as to what was prohibited. The defendants contend that the order's provision that parties could "discuss, without elaboration or any kind of characterization, information in the public record" is vague because it gives no indication as to when remarks pass from the "safe harbor of the general to the forbidden sea of elaborated."

The district court rejected this argument and instead relied on one of our precedents to guide its interpretation of the gag order. *See United States v. Brown*, 218 F.3d 415, 419 (5th Cir. 2000). In *Brown*, a defendant in a highly-publicized case appealed the district court's refusal to vacate or modify a gag order, arguing the order was unconstitutionally vague. *Id.* at 420, 430. This court distinguished *Gentile*, which involved a rule of professional conduct

5

applicable only to counsel, from a restriction on extra-judicial speech applicable to all trial participants. *Id.* at 428. The court summarized the gag order but did not quote it. *Id.* at 419. For purposes of a more precise comparison to the order in the present case, we quote the comparable language from the order as reproduced in one of the briefs in that appeal. The order first barred in general terms all extrajudicial statements or interviews. It then said this:

> Nothing set forth above shall prohibit any of the above parties from the following:
> (1) Stating, without elaboration or any kind of characterization whatsoever:
> (a) the general nature of an allegation or defense made in this case;
> (b) information contained in the public record of this case;
> (c) scheduling information;
> (d) any decision made or order issued by the court which is a matter of public record.
> (2) Explaining, without any elaboration or any kind of characterization whatsoever, the contents or substance of any motion or step in the proceedings, to the extent such motion or step is a matter of public record in this case and any ruling made thereon to the extent that such ruling is a matter of public record.

*See* Brief for Appellee at 8, *Brown*, 2000 WL 33981267.

Analyzing the order's language for vagueness, we determined that "the order provid[ed] sufficient guidance regarding the nature of the prohibited comments." *Brown*, 218 F.3d at 430. Although we did not refer to the "elaboration" and "characterization" language of the order, we implicitly approved this language when we found "no reason to believe that the parties in th[e] case would not understand the meaning" of the order. *Id.*

The defendants argue that by being allowed to "discuss" the case but without elaboration, they were given broader rights than in *Gentile,* and as we just showed, also in *Brown,* where the parties could only "state without elaboration" certain general information. *See Gentile*, 501 U.S. at 1061. They contend that the word "discuss" makes the order's instructions unclear because

it means they are allowed "to present in detail" but must do so "without elaboration or characterization of any kind." We disagree. There is no dispute that the phrase "without elaboration or characterization of any kind" modifies the word "discuss." Although "discuss" may not have been the most apt word to use, it did not redact "out" from "without elaboration."

The defendants' contention that the order is unclear is further weakened by their failure to suggest any changes to the district court after being given a draft of the order for review. The gag order was reasonably specific.

## II. *Violation of the Order*

We now turn to whether there was a violation of the district court's order. We need not agree that every statement identified by the district court violated the order. The district court's finding of criminal contempt can be affirmed if at least one statement made by a defendant violated the gag order. *See Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007). Instead of analyzing each statement identified by the district court, we address only the one that is the strongest support for the district court's finding of guilt as to each defendant.

One of the questions asked of Hill by Reaves was: "If you're not guilty, why do you think you're getting prosecuted?" Hill answered,

> And what I've said, and I've expressed it several times, is that we can now look in hindsight and see that local Democratic officials were targeted by the FBI and the Justice Department under our last president, Mr. Bush, so that now we can look back and see *a clear statistical and anecdoctal body of evidence* that shows that that was what was happening. So I respect the role that the government plays in investigating [] wrongdoing or alleged wrongdoing, I don't think I can walk away from the fact that I fit the pattern that was exhibited by this Bush Justice Department of being a local Democrat, being on the rise, and being told by an agent when he first meets me that my political career is over with. I think, in part, I'm here because I was targeted . . . The jury will have to look at the evidence and the facts and what people say from the witness stand, and that won't deal with very much, if anything, about local Democrats or politics, it will just deal with whether Don Hill and

7

Sheila Hill did anything that was wrong and improper. And I can sit here with a certainty, looking at you right now and say to you that we didn't. And I am convinced that we're going to be exonerated. (Emphasis added).

The district court found that Hill's earlier motion to dismiss the indictment because of selective prosecution did not use the phrase or concept of "clear statistical and anecdoctal body of evidence," nor did that appear in other pleadings. The court held that the assertion there was proof of government bias exceeded the public record and threatened the fairness of the trial.

We agree that Hill's statement violated the gag order. Hill did not limit his comments to the general claim that Democrats were being targeted for prosecution by the Bush Administration, which would have been permissible because those claims were included in Hill's publicly-filed selective prosecution motion. Claiming there was statistical and anecdoctal evidence supporting his claim, though, exceeded the public record. That statement had the potential to impede efforts to impanel an impartial jury.

After Hill completed his interview, Jackson then was asked a number of questions by Reaves. The district court held that Jackson's answers to three of the questions violated the gag order. We consider only one of the answers. The question posed by Reaves was "What do you think about [Hill's] claim that this whole prosecution is politically motivated?" Jackson answered,

Well, that's – that's been the claim since the beginning. That's been a claim of several people around the country. I can't – I can't particularly speak to that, because I don't know. But I know that there are several people who have made the claim and then there's been several people who have shown that during the Bush Administration that Democrats were targeted.

The district court concluded, "Jackson did not purport to quote from Hill's overruled Motion to Dismiss [for Selective Prosecution], but contended that the prosecution was politically motivated, and implied it was connected to a larger

scheme by the Bush Administration." The statements, the court insisted, "could have prejudiced the venire and interfered with a fair trial . . . ."

The fact that Jackson did not actually quote from the motion to dismiss would not in itself violate the gag order's language. Yet the statement also goes beyond what had been filed in the case because Jackson stated that it had been "shown" the Bush Administration was targeting Democrats. That transforms the allegations in the motion into a statement of fact, clearly an elaboration that was potentially prejudicial to the jury pool. This violation might fairly be seen as less egregious than those of Hill, but it was a violation nonetheless.

*III.    Intent to Violate the Order*

Hill and Jackson contend that the government failed to prove they acted with the requisite intent to violate the gag order. The intent element of criminal contempt requires "a willful, contumacious or reckless state of mind." *In re Hipp*, 895 F.2d at 1509. Behavior that amounts to a "reckless disregard for the administration of justice[,]" as opposed to negligent behavior, is a sufficient basis on which to find contempt. *See Dominique v. Ga. Gulf Corp.*, 81 F.3d 155, 1996 WL 101416, at *6 (5th Cir. 1996) (unpublished).

There was evidence to support that the defendants had the intent to violate the gag order. Hill's public relations consultant, Carter, arranged the interview with Reaves some time before the gag order was entered. Although ground rules were established that purportedly prohibited Reaves from asking questions about the case, Carter, a non-lawyer who had never seen a copy of the gag order, was responsible for relaying the rules from memory to Reaves before the interview took place. Neither Hill nor Jackson confirmed or mentioned the rules to Reaves before the interview.

Jackson testified that he had not had sufficient time to study the order because he had been busy with another trial. Despite his admitted lack of

preparation, he still neglected to bring a copy of the gag order to the interview. Hill, also an attorney, did not have a copy of the order.

Although the defendants' mere participation in the interview four days before trial did not violate the gag order, they should have proceeded cautiously with their answers. They did not. A couple questions into the interview, Hill was asked an open-ended question by Reaves; specifically, if Hill were not guilty, why was he being prosecuted? Hill, aware the gag order's purpose was to protect the impartiality of the jury pool, responded that he was being selectively prosecuted due to political and racial motivations. The government contends that it was reckless for Hill to interject the allegations of selective prosecution into the interview. The government argues that the district court denied Hill's motion to dismiss for selective prosecution, and therefore that issue would never be before the jury. Hill's response, the government insists, was intended to taint the jury pool.

Jackson testified at the contempt trial that he became uncomfortable with the interview questions and Hill's answers almost immediately. He was most concerned about Hill's comments on selective prosecution, yet he too expounded on the very subject when questioned later by Reaves. Jackson admitted that at no point did he stop the interview or ask for a break to retrieve and review a copy of the gag order. After the interview, Jackson was concerned that Hill's answers violated the order, but neither he nor Hill requested that Reaves not broadcast the interview or gave any indication that the interview may have violated the gag order.

The defendants' conduct evinced a willful, or at the very least reckless, disregard for the district court's gag order, the need for a fair trial by an impartial jury, and the fair administration of justice.

We therefore AFFIRM both convictions.