United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 16, 2007**

Charles R. Fulbruge III
Clerk

REVISED, February 9, 2007
**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-10648

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

NINA K. RAJWANI,

Defendant-Appellant

Appeal from the United States District Court
For the Northern District of Texas, Fort Worth Division
4:04-CR-174-A

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this direct criminal appeal, the defendant challenges her conviction and sentence on multiple grounds. We AFFIRM the conviction but conclude that the extent of the district court's upward departure on the defendant's sentence was excessive. For the following reasons, we VACATE the defendant's sentence and REMAND to the district court for resentencing.

-1-

The Defendant-Appellant, Nina Rajwani ("Rajwani"), a citizen of Canada, was convicted on three counts of aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 1342. The government produced proof that the defendant participated in a scheme beginning in June 2004 and continuing until September 2004, to persuade Ruth Scott ("Scott"), an elderly United States citizen residing in Fort Worth, Texas, to wire money in excess of $60,000 from her Washington Mutual bank account in Texas to Rajwani's Bank of America account in Washington on at least 9 separate occasions. Scott transferred money following telephone calls from a man identifying himself as "Joe Calender" informing her that she had won a fictitious "Spanish Lottery." She agreed to send the money to Calender in exchange for his assistance in helping her collect her winnings.

After Scott's family became suspicious, the FBI was notified and agents arranged for a transfer of "bait" money to Rajwani's bank account. Rajwani went to a Bank of America branch in Liden, Washington and attempted to withdraw this bait money from the account. The bank's assistant manager, who had been alerted to contact authorities if Rajwani came into the branch, attempted to stall Rajwani until the police arrived. After waiting a few minutes, Rajwani excused herself from the bank building claiming that she would return to the bank after retrieving an item from her car. Instead she drove away immediately.

Several days later, Calender contacted Scott again and asked her to send another $1,000 to Rajwani. Despite admonitions from the FBI, Scott complied and wired the money into a separate Washington Mutual Bank account opened by Rajwani earlier in the month. As Rajwani was attempting to enter the country from Canada on the day after Scott's transfer, she was detained by customs officials. At the time of her arrest, customs agents found a piece of notepaper in Rajwani's purse with Scott's name, address, and phone number written on it. She also had a handwritten note in her purse with the name and address of Mary Orofino. Orofino, an 85-year-old woman from Oceanside, California, testified at Rajwani's trial that she had also been the target of a similar fraudulent lottery scheme.

In addition to Orofino, one other victim of the transfer scheme testified at Rajwani's trial. Florence Jackson, an 82-year-old retiree, testified that, like Scott, she was contacted by Joe Calendar and told to send money to cover lottery taxes. At Calendar's direction, Jackson twice wired money via Western Union to Nina Rajwani and ultimately lost $66,027.23 as a result of the scheme.

Rajwani's defense was that she believed her banking activities were in support of a friend's legitimate travel business. In support, she offered the testimony of Farida Bhimji. Bhimji, a friend of Rajwani's, testified about a conversation that she overheard at Rajwani's house in 2003 between Rajwani and a man

named Nizu Remtullah.  According to Bhimji, Rajwani asked Remtullah when he would repay $6,000 she had loaned him.  Remtullah told Rajwani of his new business venture selling travel packages and asked Rajwani to help him by opening a bank account in the United States.  Remtullah explained that because he had a criminal record, he could not cross the border to do it himself.  Rajwani agreed to open the bank account to help Remtullah get the money to pay back the $6,000.  Another defense witness, Shiraz Kaba, would have testified to overhearing this same conversation but the judge excluded the testimony on the basis of a hearsay objection by the government.

At the close of the case, the jury convicted the defendant on all three counts.

Before sentencing Rajwani, the Presentence Report ("PSR") calculated Rajwani's base offense level at 7 and applied a number of enhancements.  The PSR applied a 2 level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3A1.1(b)(1) because the defendant knew or should have known that the victims were unusually vulnerable because of their age as well as a 10 level increase under U.S.S.G. § 2B1.1(b)(1)(F) because the total loss amount was $137,077.23.  The PSR also found that after the defendant's arrest, money was withdrawn from the defendant's bank account and deposited into a bank account belonging to her sister.  This attempt to hide illegal proceeds triggered a recommended 2 level enhancement under U.S.S.G. § 3C1.1.  The total offense level

of 21, with a criminal history category of I, produced a Guidelines sentencing range of 37-46 months.  The PSR also recommended an upward departure.

The district court adopted the findings and conclusions of the PSR.  Further, the court found that an upward departure was warranted because the Guidelines range did not adequately address the seriousness of the offense (U.S.S.G. § 2B1.1, Comment 19) and because the circumstances in the case were present to a degree substantially in excess of that which ordinarily would be involved in a typical offense of this kind (U.S.S.G. § 5K2.0(a)(3)).  The judge sentenced the defendant to a term of 120 months on each count, to be served concurrently.

The court acknowledged that the sentence was above the applicable advisory Guidelines range but identified the effect of the financial loss on the elderly victims and the emotional impact on the victims as justification for the upward departure.  The judge found that the fraudulent scheme caused at least some of the women to lose their life savings and that many of the women who were victimized would never be able to recover financially because of their advanced age.  As a result of these circumstances, the judge continued, the women would inevitably be affected in their emotional well-being.  In particular, the court observed that Ms. Scott had suffered from depression since the fraudulent scheme and had been unable to sleep through the night as a result of her anxiety about the incident.

Rajwani raises four issues on appeal: (1) that the evidence was insufficient to establish that she knowingly aided and abetted the wire fraud scheme perpetrated by the man calling himself Joe Calender; (2) that the district court abused its discretion in excluding testimony from defense witness Kaba concerning the conversation the witness overheard; (3) that the district court clearly erred in applying the vulnerable victim enhancement because the record did not show that Rajwani could have known of the elderly status of the victims; and (4) that the district court abused its discretion by imposing a 120 month sentence-nearly triple her calculated Guidelines range. We consider each issue below.

II.

Rajwani first argues that the district court erred in failing to grant her motion for judgment of acquittal on all charges based on her argument that the evidence was insufficient to establish her knowledge of the illegal scheme.

Rajwani's sufficiency of the evidence claim is reviewed de novo and this court considers the entire record in its review of sufficiency challenges.[1] When reviewing the sufficiency of the evidence, this court views all evidence, whether circumstantial or direct, in the light most favorable to the verdict, including all

---

[1]United States v. Alarcon, 261 F.3d 416, 421 (5th Cir. 2001).

-6-

reasonable inferences.[2]

To establish a violation of the wire fraud statute, 18 U.S.C. § 1343, the government must prove: (1) a scheme or artifice to defraud and (2) the use of wire communications in furtherance of the fraudulent scheme.[3] Proof of a scheme to defraud requires that the government show fraudulent activity and that the defendant had a conscious knowing intent to defraud.[4] As Rajwani correctly points out, the propriety of her conviction turns on whether the evidence permitted the jury to find beyond a reasonable doubt that she knew of the fraudulent misrepresentations being made by Joe Calendar and that she intended to be part of a scheme to defraud Ruth Scott.

The most direct evidence of Rajwani's knowledge of and participation in the scheme were the handwritten notes the customs agents found in her purse recording the names and addresses of two victims. In addition, the irregular nature of the transactions and the machinations the defendant followed to recover funds in the United States are probative of her guilty knowledge. The unorthodox procedures included:

- The practice of personally crossing the border and withdrawing the funds rather than having the U.S. bank simply wire the funds to the defendant's friend or to the defendant herself in Canada;

---

[2]Id.

[3]United States v. Ingles, 445 F.3d 830, 838 (5th Cir. 2006).

[4]United States v. Reyes, 239 F.3d 722, 736 (5th Cir. 2001).

- Opening multiple bank accounts for the different victims' deposits rather than having a single account;

- Making trips to various banks on nine different days, each within one or two days of the victim's deposits to empty the account and recover the funds;

- Fleeing from the bank on September 22, 2005 after the bank manager attempted to stall the defendant.

Rajwani was not inexperienced in business affairs. She served as an independent contractor for a financial services company in Canada and as a clerical worker for an importing company. The jury was entitled to conclude that the totality of these circumstances belied the defense theory that the defendant sincerely believed she was simply helping her friend collect funds legitimately owed to him in his travel agency.

We are satisfied that the circumstantial evidence produced at trial was sufficient to establish Rajwani's guilty knowledge of the scheme to defraud.

### III.

Rajwani next argues that the district court erred when it refused to admit the testimony of defense witness Shiraz Kaba that she overheard the conversation between Rajwani and Remtullah, where Remtullah requested that Rajwani assist him in his travel agency business by opening a bank account in the United States for the receipt of funds from customers. Kaba's testimony tracked the testimony of another witness, Bhimji, who was allowed to testify regarding the contents of this conversation.

Even if the district court erred in excluding this testimony as hearsay, the testimony was cumulative of the testimony the jury heard from Bhimji. Given the extensive evidence of Rajwani's guilty knowledge and the cumulative nature of the testimony, we are satisfied that the district court's error was at most harmless error.[5]

IV.

The defendant next argues that the district court erred in applying the vulnerable victim enhancement under § 3A1.1(b)(1) of the Guidelines. This enhancement applies if the defendant knew or should have known that a victim of the offense was a vulnerable victim. Rajwani argues that even if the evidence establishes that she knew about the scheme to defraud, there is no evidence that she knew of the victim's age and vulnerability. The district court's interpretation of the Guidelines is reviewed de novo, while the underlying factual findings are reviewed for clear error.[6]

Our review of the record persuades us that the district court was entitled to find by a preponderance of the evidence that Rajwani was aware of the age and vulnerability of the victim. The handwritten notes found in Rajwani's purse when she was arrested recording the names and addresses of two victims of the scheme support the district court's view that she had knowledge about the

_____

[5]See United States v. Mejia, 844 F.2d 209, 215 (5th Cir. 1988).

[6]United States v. Cabrera, 288 F.3d 163, 168 (5th Cir. 2002).

-9-

specific victims Calender had targeted. Further, the circumstantial evidence discussed above which tends to refute the defendant's claim that she was duped by her friend into collecting what she thought were legitimate funds supports the district court's finding. The district court did not clearly err in assessing this enhancement.

V.

Finally, Rajwani argues that the upward departure from the calculated Guidelines range was unwarranted; and even if some departure was appropriate, the sentence was ultimately unreasonable.

As explained above, the district court calculated the defendant's total offense level (including 3 incremental adjustments) to be 21, which along with a criminal history category of I, resulted in a Guidelines range of 37 to 46 months. After calculating the sentencing range, the district court invoked the authority of two additional provisions, § 5K2.0(a)(3) and § 2B1.1, Comment 19, to sentence the defendant to 120 months. The ultimate sentence that the district court imposed under the authority of these departure provisions corresponded with a 9 to 10 point offense level increase.[7]

First, we observe that the sentence the court imposed in this

_____

[7]An offense level increase of 9 would result in an offense level of 30 and a sentencing range of 97 to 121 months. An offense level increase of 10 would have resulted in an offense level of 31 with a sentencing range of 108-135.

case was a Guidelines sentence.  Because the court's authority to depart derives from the Guidelines themselves, a sentence supported by a departure is also a Guidelines sentence.[8]  In evaluating both a decision to depart and the extent of the departure, we review for abuse of discretion.[9]  As we explained in United States v. Smith:

> [W]here the sentencing judge, in the exercise of discretion, imposes a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all of the factors for a fair sentence set forth in the Guidelines and that it will be rare for a reviewing court to say such a sentence is unreasonable.  In Mares, we included in such Guidelines sentences a sentence that has been adjusted by applying a departure as allowed by the Guidelines.  If the district court decides to impose a non-Guideline sentence, a more thorough explanation is required.[10]

At the sentencing hearing, the court explained in detail its reasons for departing from the calculated Guidelines range.[11]  A

---

[8]United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006).

[9]Id.

[10]United States v. Smith, 417 F.3d 483, 490 (5th Cir. 2005) (internal quotation marks omitted) (citing United States v. Mares, 402 F.3d 511, 519 (5th Cir.2005)).

[11]I continue to believe that an upward departure is necessary in this case to adequately address the factors that should be taken into account in sentencing as contemplated by, I believe it's 3553(a), 18 United States Code, 3553(a).  So I'm ordering and adjudging that the defendant be committed to the custody of the Bureau of Prisons to serve a term of imprisonment of 10 years, or 120 months . . . .

Pursuant to U.S.S.G. 5K2 .0(a)(3), an upward departure may be warranted in an exceptional case above the guideline range.  Of course, the range itself is only advisory at this point in time. And that departure is warranted even though the circumstances that form the basis for the departure are taken into consideration to some degree in determining the guideline range.

-11-

The departure is warranted if the Court determines that the circumstances in this particular case are present to a degree substantially in excess of that which ordinarily would be involved in the offense of the kind confronting the Court in a particular case, and I find that in this case the circumstance-the vulnerability of the victims and the seriousness of the imposition on those victims was not taken into account to the extent those factors exist in this case.

And I might add that pursuant to U.S.S.G. 2B1.1, Comment Note 19(a), an upward departure may be warranted in cases in which the offense level determined under the fraud guideline substantially understates the seriousness of the offense. And I find that that is true in this case: In this case the financial loss as determined by the guidelines under-represents the seriousness of the offense because the defendant, along with others, preyed upon elderly women between 82 and 90 years of age.

The fraudulent scheme caused the women to lose-or at least some of the women to lose their life savings. When their life savings were depleted some of the women obtained money to pay the fraudulent fees through selling their stock, taking out a loan, or obtaining cash back from their credit card accounts. Those women not only lost their life savings but are now required to repay the loans they took out which have caused further financial hardships. These women who were victimized will never be able to recover financially and overcome their monetary losses as they have been out of the work force and have no means to regain the money they lost. These women are on fixed incomes and as a direct result of being victimized by the defendant and others they have no savings to fall back on in the case of a financial emergency, which due to their age may quite well include such things as extended medical care.

In addition, the financial loss they suffered undoubtedly caused emotional concern as to these women. In other words, it's affected their-inevitably would affect their emotional well-being. One of the victims, Ms. Scott, has suffered from depression since the fraudulent scheme. She has feelings of shame and embarrassment and no longer has the positive outlook on life she once had. She is deeply troubled by the fact that she will have nothing left for her children after her death. Since being victimized, Ms. Scott has had trouble sleeping through the night and has had to rely on a prescription sleep aid. For all of these reasons the Court finds that a sentence at the top of the advisory guideline range would not adequately consider or take into account the seriousness of the offense conduct and its impact on the victims. As I've indicated, I believe the sentence

-12-

district court does not abuse its discretion in upwardly departing if its reasons "(1) advance the objectives set forth in 18 U.S.C § 3553(a)(2); (2) are authorized by 18 U.S.C. § 3553(b); and (3) are justified by the facts of the case."[12]

We conclude the district court adequately addressed these so-called <u>Saldana</u> factors. The district court's reasons take into account the factors identified in § 3553(a)(2), including the need for the sentence to reflect the seriousness of the offense and provide just punishment. The district court also identified the aggravating circumstances that take Rajwani's conviction "outside the heartland of cases in the Guideline" as required by 18 U.S.C. § 3553(b).[13] While the departures for exploitation of a vulnerable victim and amount of loss account for Rajwani's conduct to some degree, the district court found that the women targeted were vulnerable in ways independent of their advanced age. The court found that the women had limited financial means and that the amount of loss represented much of the victims' life savings. In addition, the court found that, because of the resulting financial difficulties, the women would suffer emotionally and that Ms. Scott

I have actually imposed is-it would require at least that sentence to adequately address the objectives of sentencing in this case.

[12]<u>United States v. Saldana</u>, 427 F.3d 298, 310 (5th Cir. 2005).

[13]<u>See</u> <u>Saldana</u>, 427 F.3d at 312; <u>see</u> <u>also</u> <u>Koon v. United States</u>, 518 U.S. 81, 98 (1996).

-13-

had already experienced emotional hardships as well as some physical manifestation of that hardship in the form of difficulty sleeping. Ultimately, we cannot say that the court abused its discretion in determining that these facts justified an upward departure.

Although we have determined that the district court did not abuse its discretion in deciding to depart, we must now resolve whether the district court abused its discretion in the extent of the departure.[14] A district court abuses its discretion where the degree of the departure or the sentence as a whole is unreasonable.[15] For the reasons stated below, we conclude that both the degree of the departure and the sentence as a whole are unreasonable and, therefore, the district court abused its discretion in the extent of the departure.

The reasonableness inquiry on appeal for both Guideline and non-Guideline sentences must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a).[16] The analysis on

[14]See Saldana, 427 F.3d at 312-13.

[15]See id. (in assessing an upward departure an appellate court must determine whether the degree of a departure or the sentence as a whole is unreasonable; ultimately concluding that where the degree of the departure was not unreasonable, the district court did not abuse its discretion); see also United States v. Desselle, 450 F.3d 179, 182 (5th Cir. 2006) ("A district court abuses its discretion if it departs on the basis of legally unacceptable reasons or if the degree of the departure is unreasonable." (quoting United States v. Harris, 293 F.3d 863, 871 (5th Cir.2002))).

[16]See Booker, 543 U.S. at 261-62; The 18 U.S.C. § 3553(a) factors are:

-14-

appeal will necessarily be fact intensive and focus on whether the rationale given by the district court justifies the sentence, including any departures imposed.[17]

The district court based its departure on two facts. First, the elderly victims in this case were exceptionally vulnerable because of their advanced age and their modest means. Defrauding elderly victims of over $120,000 exacted inordinate harm, particularly on the victim Ruth Scott. Second, the court reasoned that this increased vulnerability resulted in greater psychological trauma to the victims in this case than to an ordinary victim.

The district court's explanation of the reason for its

_____

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
(5) any pertinent policy statement . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

[17]See United States v. Barressi, 316 F.3d 69, 73 (2nd Cir. 2002) ("[T]he key question is whether the reasons given by the district court are sufficient to justify the magnitude of the departure.").

departure reflects a consideration of the relevant 3353(a) factors. The sentence is therefore reasonable in a procedural sense. However, our review of the record leaves us with the firm conviction that the circumstances of this case are not so compelling as to justify the imposition of a jail sentence almost 3 times that recommended by the Guidelines. The applicable sentencing range already incorporates the aggravating circumstances of this offense to some degree and that sentencing determination, pursuant to 18 U.S.C. § 3553(a)(4), is entitled to due consideration under Booker.[18]

In United States v. Harris, we found that the district court's decision to depart by 85 percent or 16 levels below the applicable Guidelines range was unreasonable in part because the departure was not supported by extraordinary facts.[19] In Harris, a police officer was convicted for using excessive force during an arrest. Based on the court's finding that the victim to some extent provoked the officer, the sentencing judge departed downward 16 levels from the Guidelines sentence. Upon review, we found that while the victim's provocation made the case an appropriate circumstance to apply the departure, the extent of the departure was unreasonable. We explained that the circumstances and character of the provocation did not justify a sentence so far outside the Guidelines range

_____

[18]Booker, 543 U.S. at 261

[19]United States v. Harris, 293 F.3d 863, 880 (5th Cir. 2002).

-16-

because the case was not "so extraordinary as to eviscerate the Guidelines of all applicability."[20]

As stated above, we accept the district court's findings that the elderly victims were vulnerable and that their financial losses were devastating to them. We disagree, however, that the defendant's conduct or the effect of that conduct on the victims was significantly beyond that which had already been taken into account in calculating the applicable Guidelines range.

First, it is neither unusual nor extraordinary for elderly persons to be financially vulnerable. The Social Security Administration reports that Social Security benefits, which are paid to 9 out of every 10 Americans 65 and older, represent the major source of income for the elderly.[21] Over 1/2 of those married and almost 3/4ths of unmarried retired persons receive 50% or more of their income from Social Security with the average monthly benefit at approximately $1,000.[22] These figures suggest that no more than approximately $2,000 in monthly income is available to the vast majority of elderly Americans. A fraud scheme targeting elderly victims would therefore ensnare financially vulnerable victims and cause severe financial hardship in the majority of cases.

---

[20]Id.

[21]Social Security Administration Press Office, Social Security Administration, Fact Sheet (July 20, 2006), http://www.ssa.gov/pressoffice/factsheets/basicfact-alt.pdf.

[22]Id.

Also, we do not find the emotional hardship the victims suffered in this case to be of such intensity as to justify such a dramatic departure from the Guideline range. In this respect, we find instructive the Second Circuit's decision in <u>United States v. Mandel</u>.[23] In that case, the defendant feigned a romantic attraction to numerous older women in order to defraud them of their savings. After calculating the defendant's offense level, the district court departed upward 4 levels based on extreme psychological injury to the victims. On appeal, the Second Circuit vacated the sentence, noting that the record evidence of psychological trauma could not, standing alone, support the 4 level upward departure, because both the base offense level for fraud and the vulnerable victim adjustment had already taken into account the harm to the victims.[24] The court explained that "[f]raud will generally tend to reduce its victims' self-esteem, as well as their bank accounts."[25]

We have the same reaction to the district court's discussion of the emotional distress the victims suffered in this case. Beyond the finding that Ms. Scott began relying on a prescription sleep aid after the fraud, there is no evidence in the record that she or any other victims required medical treatment for their emotional distress. The circumstances here, while somewhat atypical, are not so exceptional as to justify the extraordinary

_____

[23]991 F.2d 55 (2d. Cir. 1993).

[24]<u>Mandel</u>, 991 F.2d at 59.

[25]<u>Id.</u>

-18-

upward departure assessed by the district court.[26]

In sum, we conclude that the financial vulnerability of victims and the related emotional hardship make this case somewhat atypical and justify an upward departure.  However, the Sentencing Commission has substantially accounted for these aggravating characteristics of the defendant's conduct by providing for a vulnerable victim enhancement and an enhancement based on the amount of the fraud.  While we recognize the deference due a district court's sentence, we find no circumstance in this case that takes it so far beyond the heartland of fraud offenses as to "eviscerate the Guidelines of all applicability."  The district court's sentence, which is 3 times the mid-Guideline range, was therefore unreasonable.

Our review of the record persuades us that a sentence beyond twice the top of the Guidelines range (92 months) would fail reasonableness review under the facts presented here.[27]  In setting

---

[26]Cf. id. (testimony by elderly female victim that, as a result of a financial fraud, she had lost her job, seen a therapist, and become reticent to pursue romantic interests in other men, did not support an upward departure since offense level and vulnerable victim adjustment took harm to victim into account).

[27]We consider two somewhat analogous Guidelines provisions in this determination.  One provision, U.S.S.G. § 2B1.1(13)(B)(iii), recommends a 4 level enhancement where a fraud offense substantially endangered the solvency or financial security of 100 or more victims.  The other provision, U.S.S.G. § 2B1.1(12)(A), recommends a 2 level departure where the offense involved the conscious or reckless risk of death or serious bodily injury.  On a severity scale, we are unable to see how the defendant's conduct or the result of that conduct could be considered significantly more serious than envisioned by these

-19-

this maximum sentence, we are not precluding the district court

from imposing a lower sentence.[28]

VI.

For the foregoing reasons, we AFFIRM Rajwani's conviction.

However, we VACATE Rajwani's sentence and REMAND the case to the

district court for resentencing consistent with this opinion.

AFFIRMED IN PART.

VACATED IN PART.

REMANDED.

---

two Guidelines sections, which, if assessed here, would call for
a 6 level increase in the offense level and a Guidelines range of
70-87 months.

[28]See United States v. MacLeod, 80 F.3d 860, 869 (3rd Cir.
1996) (vacating upward departure sentence as unreasonable and
remanding with instructions setting a ceiling for resentencing;
two level departure was upper bound for reasonableness); see also
United States v. Thurston, 456 F.3d 211, 220 (1st Cir. 2006)
(vacating sentence imposed as unreasonable and remanding with
instructions setting a floor for resentencing); United States v.
Moreland, 437 F.3d 424, 437 (4th Cir. 2006) (same).