**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 1, 2011

No. 10-11024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BRION GARY RANDALL,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-117-1

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Brion Gary Randall appeals his sentence following a plea of guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of bank fraud in violation of 18 U.S.C. § 1344. Randall raises two issues before this court: (1) whether the district court judge should have recused himself because the judge also presided over a civil trial involving Randall that was based on the same underlying facts; and (2) the procedural and substantive reasonableness of his sentence. Finding no error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-11024

## I. FACTS AND PROCEDURAL HISTORY

From 2004 to 2009, Randall conducted two schemes that eventually defrauded at least twenty-seven investors and three banks. Randall conducted the first scheme by persuading individuals, some of whom he met at Alcoholics Anonymous ("AA") meetings, to invest in non-existent, short-term loan programs that promised investors high interest rates, low risk, and a quick return of capital. Randall told his victims that he was pooling money from various investors into two central bank accounts, that he had invested millions of dollars of his own money in the venture, and that the accounts regularly maintained a balance of between $25 to $29 million so the victims' money was readily accessible. Randall used fake statements, portfolio summaries, and computer screen shots to reassure and convince the investors of his credibility. Twenty-seven investors eventually sustained an aggregate loss of $4.6 million. As part of his second scheme, Randall obtained over $1 million in loans from Texas Capital Bank, Bank of America, and a predecessor of Wells Fargo Bank by submitting fraudulent statements that inflated his income and assets. Randall also forged the signatures of victims on loan guarantees. Randall eventually defaulted on all of the fraudulently obtained loans, and the banks lost $875,216.38.

On March 3, 2010, Randall was charged with bank fraud and mail fraud. Randall waived indictment and pleaded guilty to both counts at an arraignment before a magistrate judge. The district court judge agreed with the magistrate judge's recommendation to accept Randall's plea and found Randall guilty on June 2, 2010. Six days before Randall's sentencing, the judge transferred the case to a different district court judge, who was presiding over a civil case filed by the Securities and Exchange Commission ("SEC") against Randall based on the same fraudulent conduct at issue in Randall's criminal case. Randall filed several motions, objecting to the transfer, moving for a continuance and for

2

No. 10-11024

access to documents under seal in the civil case, and moving for the judge's recusal from the criminal sentencing. The judge to whom the case was transferred denied these motions. After a hearing, that judge determined that the guidelines range for Randall's sentence was 97 to 121 months. The court sentenced Randall to 180 months imprisonment, as well as a substantial restitution payment and three years of supervised release. Randall appealed.

## II. DISCUSSION

### 1. Recusal

Randall argues that the district court judge to whom the case was transferred[1] abused his discretion in denying Randall's motion to recuse that judge under both 28 U.S.C. § 455(a) and § 455(b)(1).[2] Randall asserts that the judge had personal knowledge of disputed facts because he also presided over the civil suit filed by the SEC against Randall. In support of that assertion, Randall contends that the knowledge gained by the receiver in the civil case should be imputed to the judge. Further, during the civil suit, the judge presided over depositions that primarily focused on the deletion of computer files from computers owned by Randall.

Section 455(a) and § 455(b)(1) "afford separate, though overlapping, grounds for recusal." *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003). Thus, "whenever a judge's partiality might reasonably be questioned, recusal is required under § 455(a), irrespective [sic] whether the circumstance is covered

---

[1] Randall does not challenge the transfer on appeal, only the decision by the transferee judge not to recuse himself.

[2] 28 U.S.C. § 455 provides that:

(a) Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
       (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

by § 455(b)." *Id.* "[T]he view of the average, reasonable person is the standard for analysis as to whether a judge shall disqualify himself or herself." *In re Faulkner*, 856 F.2d 716, 720 (5th Cir. 1988).

"[T]he origin of a judge's alleged bias is of critical importance." *Andrade,* 338 F.3d at 455 (noting that the Supreme Court applied the "extrajudicial source rule" to the interpretation of § 455 in *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Personal knowledge" as used in § 455(b)(1) generally does not encompass knowledge acquired by a judge while performing judicial duties. "As a general rule, for purposes of recusal, a judge's 'personal knowledge' of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification." *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) (internal quotation marks and citation omitted). Thus, "[m]ere prior knowledge of some facts concerning a litigant . . . is not in itself necessarily sufficient to require disqualification." *United States v. Seiffert*, 501 F.2d 974, 978 (5th Cir. 1974); *see also United States v. Clark*, 605 F.2d 939, 941 (5th Cir. 1979) (per curiam) (finding that the trial judge's receipt of a presentence report did not disqualify him, as holding otherwise would suggest that the court "would be disqualified to try the same defendant on other offenses"; such a result "would be highly untenable in light of the decisions that a trial judge, who is familiar with the defendant's background by reason of having tried him in previous cases, is not thereby disqualified to try the same defendant in subsequent cases" (quoting *Smith v. United States*, 360 F.2d 590, 592 (5th Cir. 1966))).

We review a trial court's denial of a motion to recuse for abuse of discretion. *United States v. Allen*, 587 F.3d 246, 251 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1564 (2010). We find no abuse of discretion in the judge's denial of Randall's motion to recuse. Randall has made no showing that the judge

obtained any "extrajudicial information." Rather, all of the information the judge allegedly received by presiding over the civil case was information gained while the judge acted in a judicial capacity. Judges routinely receive potentially inflammatory or irrelevant information that cannot later be used in a subsequent or related proceeding—for example, evidence found to be inadmissible. Yet, we rarely find such information requires recusal. Without any showing that the "intrajudicial" information learned by the judge in this case was of a type that would make fair judgment impossible, such information is not disqualifying.

Nor do we believe that the mere fact that the judge obtained information during the course of the civil proceeding would raise a question in the mind of a reasonable person as to the judge's impartiality. Randall does not point to any adverse rulings or opinions that could demonstrate that the judge harbored "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 963-64, 966 (5th Cir. 1980) (finding that a judge did not need to recuse from presiding over a civil case simply because he made evidentiary rulings during the course of a criminal trial in which the defendant was also involved; noting that the rulings in the criminal trial would not "cause a reasonable third party to question his impartiality in the civil litigation"). The district court judge did not abuse his discretion in denying the motion to recuse given the facts of this case.

**2. Reasonableness of Sentence**

Randall challenges both the procedural and substantive reasonableness of his non-Guidelines sentence.[3] We review the reasonableness of a district

---

[3] We recognize three types of sentences: (1) "a sentence within a properly calculated Guidelines range"; (2) "a sentence that includes an upward or downward departure as allowed by the Guidelines"; and (3) "'a non-Guideline sentence' or a 'variance' that is outside of the

court's sentencing decision under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Herrera-Garduno*, 519 F.3d 526, 529 (5th Cir. 2008).  In reviewing a sentence, we utilize a two-step approach, first asking "whether the district court committed a procedural error." *United States v. Valencia*, 600 F.3d 389, 433 (5th Cir.), *cert. denied*, 131 S. Ct. 285 (2010). Such errors include "miscalculating or failing to calculate the sentencing range under the Guidelines, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir.), *cert. denied*, 130 S. Ct. 192 (2009). We review a district court's interpretation of the sentencing Guidelines de novo and the underlying factual findings for clear error. *United States v. Rajwani*, 476 F.3d 243, 248 (5th Cir. 2007).

"If the sentence is procedurally proper, the court engages in a substantive review based on the totality of the circumstances." *Mondragon-Santiago*, 564 F.3d at 360.  "[T]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Herrera-Garduno*, 519 F.3d at 530 (citation omitted).  "The reasonableness inquiry on appeal for both Guideline and non-Guideline sentences must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." *Rajwani*, 476 F.3d at 250.

"A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." *Mondragon-Santiago*, 564 F.3d at 361 (quoting *United States v. Rodriguez*, 15 F.3d 408, 414 (5th Cir. 1994) (quotation omitted)).  If a

---

relevant Guidelines range." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (quoting *United States v. Smith*, 440 F.3d 704, 706-08 (5th Cir. 2006)).

defendant fails to raise an objection to either the procedural or substantive reasonableness of a sentence, we review the sentence for plain error. *Id.* To survive plain error review, a defendant must show that: "(1) there is error (and in light of Booker, an 'unreasonable' sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007). If the defendant makes that showing, we have the discretion to correct the forfeited error, but should do so only if the "error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted).

**A. Sentencing Procedure**

Randall argues that the district court did not provide an adequate explanation of the reasons for imposing a non-Guidelines sentence. Because Randall did not specifically object during sentencing on this ground,[4] we review for plain error, *see Mondragon-Santiago*, 564 F.3d at 361, and find none on this record. The district court cited several of the § 3553(a) factors during the sentencing hearing, as well as discussed the facts of the case that warranted a greater sentence than that provided by the Guidelines. *Compare Rajwani*, 476 F.3d at 251 (finding a sentence procedurally reasonable because the district court's explanation of the reason for its departure reflected a consideration of the relevant § 3353(a) factors), *with Mondragon-Santiago*, 564 F.3d at 363 (finding procedural error because the district court "did not give any reasons for its sentence beyond a bare recitation of the Guideline's calculation"). Although when a district court imposes a non-Guidelines sentence, "a more thorough

---

[4] Randall contends that his offer to file his objections in writing, which was rejected by the district judge with words to the effect of "you have made your objections," suffices to encompass this procedural objection. However, he neither communicated this objection to the district court nor made clear that he had additional objections not already raised.

No. 10-11024

explanation is required," *Smith*, 440 F.3d at 707, the district court gave such an explanation here.[5]

Randall also argues that the district court erred because it did not first consider the Guidelines departure provisions before imposing a variance. We again conduct a plain error review, as Randall did not object during sentencing on this ground. *See United States v. Gutierrez*, 635 F.3d 148, 152 (5th Cir. 2011) (reviewing a similar argument for plain error because the district court could not have understood from an objection to other procedural aspects of a sentence that the defendant wanted the court to consider the departure policy statement in § 4A1.3).[6]

Randall relies on a case from the Third Circuit that states that a district court must engage in a three-step process when imposing a sentence: "(1) calculate the applicable Guidelines range, (2) formally rule on any departure motions, and (3) exercise its discretion in applying the factors set forth in 18 U.S.C. § 3553(a)." *See United States v. Grier*, 585 F.3d 138, 141-42 (3d Cir.

---

[5] To the extent that Randall challenges the written statement of reasons provided, that statement was also adequate. *See United States v. Gonzalez*, 445 F.3d 815, 819-20 (5th Cir. 2006) (finding that the district court's statements, made both orally in open court and in writing in a statement of reasons, satisfied the requirements of § 3353(c)(2)); *United States v. Powell*, 402 F. App'x 930, 932 (5th Cir. 2010) (per curiam) (unpublished) (finding no abuse of discretion because the "sentencing hearing transcript, written judgment, and statement of reasons, together provide details of the district court's rulings" and, therefore, "the district court sufficiently complied with § 3353(c)(2)").

[6] In his reply brief, Randall argues that a 2010 amendment to § 1B1.1 of the Guidelines supports his position. That argument was arguably waived because Randall failed to raise it in his opening brief. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . ., are waived."). Regardless of waiver, the cited amendment, Amendment 741, became effective after the date of Randall's sentence and has not been made retroactively applicable. The district court was required to apply the Guidelines version in effect on the date of Randall's sentence. *See* 18 U.S.C. § 3553(a)(4)(ii); *see also United States v. Lindsey*, No. 10-10769, 2011 WL 1758724, at *1 (5th Cir. May 9, 2011) (per curiam) (unpublished) (stating that the district court correctly applied a former Guideline provision because the defendant was sentenced prior to the effective date of an amendment, and the amendment was not made retroactively applicable).

No. 10-11024

2009). The Third Circuit found that "[b]y making the Guidelines advisory, *Booker* gave district courts discretion at step three—but only after steps one and two have been completed properly." *Id.* at 142. Other circuits have held similarly. *See United States v. Tucker*, 473 F.3d 556, 560-61 (4th Cir. 2007) (stating that the court should first look to whether a departure is appropriate and, if the "departure range still does not serve the factors set forth in § 3553(a), the court may then elect to impose a non-guideline sentence" (quoting *United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006)); *United States v. Solis-Bermudez*, 501 F.3d 882, 884 (8th Cir. 2007) (holding that to preserve the distinction between departures and variances, district courts must engage in the three-step process); *United States v. Guyton*, 636 F.3d 316, 319-20 (7th Cir. 2011) (noting that § 1B1.1 lays out the order in which courts apply the Guideline provisions).

Here, the PSR did not recommend any departures, nor did the Government ask for one. Even though the record does not clearly indicate whether the district court considered any applicable departure provisions before imposing a variance, Randall has not shown that this alleged defect in the procedure constituted plain error affecting his substantial rights. We have also recently rejected an argument similar to Randall's. *See Gutierrez*, 635 F.3d at 150-52. Randall's argument that the district court committed procedural error because it did not first consider a departure before imposing a non-Guidelines sentence fails under plain error review.

Finally, Randall asserts that the district court erred in relying on "further crimes of the defendant" and "the history and characteristics of the defendant." Even though Randall did not have a criminal history, the PSR described a disciplinary action against Randall after he conducted transactions on customer funds without the consent of those customers while Randall was employed at Merrill Lynch. The PSR described this disciplinary action, and victims testified

9

during the sentencing about their knowledge of the incident.  While the district court did not specifically refer to the disciplinary action when explaining its reasons for the variance, the district court could take that action into account.  Further, several witnesses testified that they believed Randall was capable of committing fraud again.  Given the facts of this case, we find no error in the district court's finding that these two factors supported a variance.

### B. Substantive Reasonableness

Because Randall objected below to the substantive reasonableness of the sentence, we review his arguments under an abuse of discretion standard. When reviewing a sentence for substantive reasonableness, we do not use a "rigid mathematical formula that uses the percentage of a departure [from the Guidelines range] as the standard for determining the strength of the justifications required for a specific sentence." *United States v. Williams*, 517 F.3d 801, 811 (5th Cir. 2008) (quoting *Gall*, 552 U.S. at 47) (alteration in original).  However, we may "take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Id.* at 811-12 (quoting *Gall*, 552 U.S. at 47).  "A non-Guideline sentence is unreasonable where it '(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.'" *United States v. Tzep-Mejia*, 461 F.3d 522, 528 (5th Cir. 2006) (quoting *Smith*, 440 F.3d at 708).

We first note that even though the variance in this case was approximately fifty percent higher and fifty-nine months more than the top of the calculated Guidelines range, we have upheld similar variances. *See, e.g., Smith*, 440 F.3d at 705-06 (sentence of 60 months where maximum sentence under Guidelines was 27 months); *United States v. Jones*, 444 F.3d 430, 433 (5th Cir. 2006) (sentence of 120 months where maximum Guidelines sentence was 57 months); *United States v. Brantley*, 537 F.3d 347, 348-50 (5th Cir. 2008) (variance from

No. 10-11024

Guideline maximum of 51 months to sentence of 180 months); *Williams*, 517 F.3d at 811 (variance from Guideline maximum of 121 months to sentence of 172 months).

Randall argues that the district court erred in using his participation in AA meetings and the fact that some of his victims were also members of AA to support an upward variance. The district court stated that it did not feel that the Guidelines took into account the unique facts of this case, namely that Randall used his role as a leader in AA meetings to find at least some of his victims. Further, the district court noted that individuals involved in AA were expected to lower their guard and maintain "rigorous honesty." While they were not "vulnerable victims" as defined in § 3A1.1 of the Guidelines, they were vulnerable to fraud crimes perpetrated by leaders within AA like Randall in a way different from ordinary victims, thus making Randall's conduct particularly reprehensible. We do not find an abuse of discretion in the district court's conclusion that the Guidelines did not take such circumstances into consideration.

During sentencing, defense counsel also objected to the variance on the grounds that the Guidelines already accounted for certain aspects of the offense and the victims. However, "a district court may rely upon factors already incorporated by the Guidelines to support a non-Guidelines sentence." *Brantley*, 537 F.3d at 350; *see also Williams*, 517 F.3d at 809 ("The Supreme Court's decision in *Booker* implicitly rejected the position that no additional weight could be given to factors included in calculating the applicable advisory Guidelines range, since to do otherwise would essentially render the Guidelines mandatory."). In *Williams*, we held that "the district court was not prohibited from considering the number of victims, the harm to individuals, the expansive reach of the crimes, or the complexity of the scheme, even though the Guidelines sentencing range for money laundering may implicitly have taken complexity

No. 10-11024

and the number of victims into account . . . ." 517 F.3d at 810-11. Thus, even though the district court found the abuse of trust and vulnerable victim enhancements unwarranted in this case does not mean that the district court could not consider such facts when imposing a non-Guidelines sentence.

Randall has not shown that the district court gave weight to an irrelevant or improper factor. Nor has Randall demonstrated that the district court did not account for a factor that should have received significant weight. Although the sentence in this case is high, Randall's fraudulent schemes were lengthy, complex, and involved numerous victims. We find the sentence to be both procedurally and substantively reasonable.

AFFIRMED.