# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-11041

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

VERONICA M. ALLEN; BERNARD B. ALLEN,

Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Veronica and Bernard Allen appeal the district court's denial of their motion to recuse from their criminal contempt trial. Veronica Allen also challenges her conviction for criminal contempt on the grounds that the district court relied on an incorrect legal standard in finding her guilty and that the evidence was insufficient to support her conviction. We affirm.

## I

The Government filed a civil petition in district court to enforce IRS summonses issued to the Allens. On February 13, 2008, in response to the petition, the district court issued an order to show cause why the summonses should not be enforced, directing the Allens to appear before the court on

February 20, 2008. The Allens, however, did not appear but instead a number of documents were delivered to the court clerk on February 19, including a "NON-NEGOTIABLE NOTICE OF ACCEPTANCE, NOTICE OF FACTS AND DEMAND FOR FULL DISCLOSURE," which included as attachments copies of the IRS summonses, the district court's order to show cause, and the Government's petition to enforce the summonses. The document, which bore notarized signatures of both the Allens, stated: "I am in receipt of your alleged 'SUMMONS.'"

That same day the court issued another order directing the Allens to comply with the IRS summonses by appearing at a specified IRS office on February 29. The Allens again failed to comply.

Following the Allens' failure to appear at the IRS office, the Government moved to hold the Allens in civil contempt. The next day, on June 10, 2008, the court issued an order to show cause why the Allens should not be held in contempt, directing them to appear before it on June 19. The Allens again failed to appear, instead filing documents with the clerk through a process server who appeared on this date. These documents included a notarized affidavit, signed by both Allens, which stated that it constituted the Allens' appearance in court. The affidavit also stated that the Allens had received the court's order to show cause issued on February 13, 2008, and that it "was addressed to and delivered to my wife and I . . . ordering my wife and I . . . to appear in this court room on the 20th day of February, 2008 at 10 am."

Confirming that the Allens were not present, the district court asked the Government for suggestions on how to proceed. The Government responded that it would file a motion for a writ of attachment and that the hearings could proceed when the Allens were brought to court. The district court, however,

directed the United States Attorney to initiate criminal contempt charges pursuant to 18 U.S.C. § 401(3), and the Government did so shortly thereafter.

After her initial appearance in the criminal matter, Mrs. Allen filed a motion seeking the recusal of the trial judge. Citing remarks made by the court during the hearing on June 19, which she asserted appeared to show that the court had prejudged her guilt, Mrs. Allen argued that the judge would be unable to preside with fairness and impartiality. The court denied this motion.

During the bench trial on the criminal contempt charges, Mrs. Allen testified that she was out of town when the original show cause order was delivered and that her husband signed her name on the documents filed in lieu of an appearance on February 20. She further testified that she was unaware of the show cause order until after the original hearing date and that she was also unaware of the order directing her to appear at the IRS offices on February 29. Mrs. Allen admitted that she knew of the order to appear in court on June 19, but testified that she was advised by Galen Danner, a layperson, that it would be sufficient to appear by filing documents with the court. Mrs. Allen also testified that Danner prepared these documents for a $2,000 fee and that she believed in good faith that failure to appear in person would not violate the court's order.

Danner testified at trial but refused to answer most questions for fear of self-incrimination. Danner did admit to knowing the Allens but denied that he provided them with assistance in preparing the documents that were submitted to the court in lieu of a personal appearance. He also denied that he advised the Allens not to appear in court and that the Allens had paid him money in exchange for his legal advice.

The district court ultimately found Mr. Allen guilty of three instances of contempt and Mrs. Allen guilty of one instance.

## II

The Allens argue that the district court erred in denying Mrs. Allen's motion to recuse. A trial judge's denial of a motion to recuse is reviewed for abuse of discretion.[1] However, because Mr. Allen did not file a separate motion to recuse in district court, his arguments that were not raised by Mrs. Allen in her original motion to recuse are reviewed for plain error.[2]

## A

As an initial matter, Mr. Allen argues that the trial judge used an incorrect standard in evaluating the motion to recuse. Because this objection was not made below, we review for plain error.[3]

In denying the motion to recuse, the trial judge stated: "I'm unaware of any case authority that would suggest I should recuse under these circumstances. My obligation is to preside unless there's a legal reason why I should not . . . . And I do know that I am supposed to preside unless there's a reason not to." Mr. Allen argues that this statement demonstrates that the trial judge did not consider the correct standard for recusal outlined in 28 U.S.C. § 455(a).[4]

This argument is unavailing because the record does not indicate that the trial judge failed to consider § 455(a). The judge obviously did not believe that

---

[1] *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999).

[2] *See United States v. Molina*, 530 F.3d 326, 329 (5th Cir. 2008); *see also United States v. Westbrook*, 119 F.3d 1176, 1185-86 (5th Cir. 1997) (collecting cases holding that a codefendant is not required to make the futile gesture of repeating or joining a motion or objection that has already been denied by the trial judge).

[3] *See Molina*, 530 F.3d at 329.

[4] *See* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.").

he had an obligation to preside regardless of the circumstances, as he clearly stated that he would preside only if there was no legal reason not to. Inconsistency with § 455(a) would constitute such legal reason. Moreover, the judge's statement was not legally incorrect.[5]

Mr. Allen also argues that the district court should have used the "more stringent" standard announced in *United States v. CBS, Inc.*,[6] but that case is inapposite. In *CBS*, it was critical that the trial judge's initial orders were not recorded, requiring the judge to act as material witness regarding the content of the initial orders as well as the judge in the subsequent contempt proceedings.[7] The same circumstances are not present here.

**B**

The Allens argue that the trial judge should have recused himself because his statements and conduct during the hearings on the orders to show cause and at trial would cause a reasonable person to doubt the judge's impartiality. The federal statute governing judicial disqualification provides that disqualification is necessary "in any proceeding in which [the judge's] impartiality might reasonably be questioned."[8] We have explained that the standard for disqualification is "whether a reasonable person, with full knowledge of all the

---

[5] *See Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631, 634 (5th Cir. 1971) (holding that a trial judge did not abuse his discretion by failing to recuse himself under § 455 and noting that the judge "considered the matter of his possible disqualification and properly concluded that it was his duty and his obligation to continue to preside in this case").

[6] 497 F.2d 107, 109 (5th Cir. 1974) (holding that a contempt trial had to be conducted before a different judge and stating that this was "especially [so] in view of the fact that no exigent circumstances militate otherwise").

[7] *Id.* at 108-09 (describing the situation as a "strange milieu of a judge passing on the clarity of his own orders, which had to be substantiated largely by his own legal staff").

[8] 28 U.S.C. § 455(a).

circumstances, would harbor doubts about the judge's impartiality."[9]  Thus, actual bias is not required.  However, as the Supreme Court has explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[10]

First, the trial judge's remarks regarding his opinion of the case—that the Allens were likely in criminal contempt and that they violated the courts orders—did not reveal opinions derived from an extrajudicial source.[11]  Even if they did, however, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[12]

---

[9] *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999) (quoting *Vieux Carre Prop. Owners, Residents, and Assocs., Inc. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991) (internal quotation marks omitted)).

[10] *Liteky v. United States*, 510 U.S. 540, 555 (1994).

[11] *See id.* at 551 ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings.  It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.").

[12] *Id.* at 555 (emphasis added).

The Allens argue that they made the requisite showing. First, they argue that the judge's statements that the Allens had "violated" the orders to show cause and that they were "now in criminal contempt as far as [he was] concerned" required disqualification because they demonstrated the trial judge's antagonism and prejudgment of the case. As to the statements that the Allens "violated" the orders to show cause, the district court merely made a correct factual observation. The Allens unquestionably did "violate" the orders by not appearing in court.

As to the statement that the Allens were in criminal contempt as far as the trial judge was concerned, the record does not support the conclusion that the district court prejudged the case. For example, on June 19th, the court followed the allegedly biased statement by remarking that the Allens would be subject "to criminal punishment if, in fact, at the hearing that's appropriate. They may have some excuse. I'm going to hear whatever they have to say, but the indication is they violated at least two, maybe three, orders of the Court." Further, on September 8th, the district court described the culpable conduct as "three potential violations" and, in response to a claim of lack of notice by Mrs. Allen, stated, "I don't mean to prejudge that. I'm just saying that's what I was led to believe at the time. . . . Well, if she [did not have notice,] then that's certainly something I would consider." Notably, the district court ultimately found Mrs. Allen guilty of contempt for violating only the final order to show cause. Accordingly, the Allens have not demonstrated that the district court prejudged the case.

The Allens also point to the district court's sua sponte reconsideration of the magistrate judge's appointment of a government-funded attorney—but this do not provide a basis for recusal:

[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.[13]

In evaluating whether a judge should have been recused, our "review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents."[14] The record as a whole does not support a conclusion that the trial judge should have recused himself. The original response papers filed on February 19 bore notarized signatures from both Allens indicating that they had received the order yet failed to comply. Such an inference would also have been reasonable on June 19, as the Allens had hired a process server to deliver "appearance" documents, which expressly stated they had received the orders to show cause. Thus, any statements by the trial judge that the Allens knew of the orders and declined to comply were reasonable and not indicative of antagonism or bias. Moreover, the district court did not make any of the objected-to statements until after the Allens had failed to comply with no less than three of its orders, and only after the government moved for civil contempt. Thus, the Allens have not demonstrated that the trial judge harbored "a deep-seated favoritism or antagonism that would make fair judgment impossible,"[15] nor have they demonstrated that "a reasonable person,

---

[13] *Id.* (internal citation omitted).

[14] *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003).

[15] *Liteky*, 510 U.S. at 555.

with full knowledge of all the circumstances, would harbor doubts about the judge's impartiality."[16]

## C

The Allens also argue that the trial judge should have recused himself because he acted as both prosecutor and judge in the criminal contempt proceedings. The Allens rely heavily on the district court's actions in asking the Government to prosecute the Allens for criminal contempt when the Government initially suggested only civil contempt proceedings and a writ of attachment. The Allens also point to the trial judge's direction that three separate counts of contempt, rather than a single count, should be prosecuted against each of the Allens.

The Supreme Court has held that "it is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders."[17] The Court noted that Federal Rule of Criminal Procedure 42, which allows a court to use private attorneys to prosecute contempt actions, "reflects the longstanding acknowledgment that the initiation of contempt proceedings to punish disobedience to court orders is a part of the judicial function."[18]

Here, the district court asked the attorney for the Government to prosecute the Allens for criminal contempt. The Allens failed to comply with court orders on three separate occasions. The district court's action was in accordance with current Supreme Court precedent and Rule 42(a)(2).

---

[16] *Matassarin v. Lynch*, 174 F.3d 549, 571 (5th Cir. 1999) (quoting *Vieux Carre Prop. Owners, Residents, and Assocs., Inc. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991) (internal quotation marks omitted)).

[17] *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).

[18] *Id.* at 795.

The Allens also argue that the trial judge assumed the role of the prosecutor and judge because he asked witnesses questions during the hearing, allegedly more than the Government. While the Supreme Court has determined that a judge cannot "act as a grand jury and then try the very persons accused as a result of his investigations," the Court was careful to note that "adjudication by a trial judge of a contempt committed in [a judge's] presence in open court cannot be likened to" such a proceeding.[19] Courts have only found basis for recusal when a judge acts as both the prosecutor and the judge without the assistance of a government attorney.[20] Here the district court did not prosecute the Allens—the Government aptly filled that role. Further, the vast majority of the questions the Allens assign to the court were clarification questions or background information. Therefore, these arguments fail.

### III

Mrs. Allen claims that the district court erred in adjudicating her conviction for criminal contempt because it used the wrong definition of "willful." We review the correctness of the legal standard used by the district court de novo.[21] But, because Mrs. Allen did not object, review is for plain error.[22] To

---

[19] *In re Murchison*, 349 U.S. 133, 137 (1955).

[20] *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir. 1992) ("[The district court] *sua sponte* initiated the contempt proceeding, questioned the witnesses and otherwise acted as prosecutor, and then decided all factual and legal issues."); *In re Davidson*, 908 F.2d 1249, 1251 (5th Cir. 1990) ("The manner in which this hearing was handled convinces us that either (i) Judge Hittner tacitly appointed [the appellee's] counsel as prosecutor or (ii) Judge Hittner himself acted as prosecutor."); *see also United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996) ("The district judge conducted the resulting hearing without the aid of a prosecutor, deciding himself which witnesses would testify against Neal.").

[21] *Cf. Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009) (stating that in a civil contempt proceeding this court "review[s] the district court's underlying findings of fact for clear error and its underlying conclusions of law de novo" (internal citation omitted)).

[22] *See United States v. Molina*, 530 F.3d 326, 329 (5th Cir. 2008).

prevail, Mrs. Allen must demonstrate (1) error, (2) that is clear and obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings.[23]

We have held that the elements of criminal contempt under 18 U.S.C. § 401(3) are: "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order."[24] In this circuit "[f]or a criminal contempt conviction to stand, the evidence . . . must show both a contemptuous act and a willful, contumacious, or reckless state of mind."[25] Mrs. Allen claims that the district court used an erroneous definition of "willful." When asked by defense counsel to define "willful," the district court explained:

> I don't think that's necessary, but one of the things I obviously took into account is whether it was done – it was a volitional act done by someone who knew or reasonably should have been aware that his or her conduct was wrong.

According to *Black's Law Dictionary*, "reckless" means "a gross deviation from what a reasonable person would do."[26] On the other hand, "negligence" is defined as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation."[27] Based on the district court's recitation of its definition of willfulness, it seems to have used a standard closer to negligence, rather than recklessness.

---

[23] *See id.*

[24] *United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997).

[25] *United States v. West*, 21 F.3d 607, 608 (5th Cir. 1994) (quoting *United States v. McCargo*, 783 F.2d 507, 510 (5th Cir. 1986) (internal quotation marks omitted)).

[26] BLACK'S LAW DICTIONARY 1298 (8th ed. 2004).

[27] *Id.* at 1061.

We have explained that "willfulness" in the context of the criminal contempt statute at a minimum requires a finding of recklessness,[28] which requires more than a finding that an individual "reasonably should have known" that the relevant conduct was prohibited. Thus, the district court clearly erred.

But, Mrs. Allen must also establish that the error was prejudicial and would result in a miscarriage of justice. In the analogous context of jury instructions, we have held that "[w]hen a jury instruction omits or significantly misstates an essential element of an offense, the error may be severe enough to meet the plain-error standard."[29] In that context, plain error occurs if "considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice."[30] The relevant inquiry is whether the erroneous standard used "could have meant the difference between acquittal and conviction."[31]

The district court stated on the record that it did not credit Mrs. Allen's testimony that she innocently believed that compliance with the order to show cause could be achieved by filing "appearance papers." The court also opined that these filings coupled with the Allens' conduct compelled the conclusion that "they did what they did willingly and in a conscious decision to show contempt of the judicial system and our government."

---

[28] *See West*, 21 F.3d at 608.

[29] *United States v. Brown*, 553 F.3d 768, 785 (5th Cir. 2008), *cert. denied sub nom. Combs v. United States*, 129 S. Ct. 2812 (2009) and *Brown v. United States*, No. 09-5316, 2009 WL 2058230 (Oct. 5, 2009).

[30] *United States v. Stone*, 960 F.2d 426, 434 (5th Cir. 1992) (quoting *United States v. Sellers*, 926 F.2d 410, 417 (5th Cir. 1991)).

[31] *Id.* (quoting *United States v. Contreras*, 950 F.2d 232, 240 (5th Cir. 1991)).

The Allens urge us to ignore these statements because they were made at sentencing, not trial. But, they cite no authority for the proposition that a district court's statements on the evidence at sentencing may not be considered as an accurate reflection of the district court's view of the evidence during trial. The trial judge's statements clearly indicate that the court found that the Allens acted willfully. There was no plain error.

## IV

Mrs. Allen argues that the evidence was insufficient to support her conviction for criminal contempt. She points to her testimony that she believed that the submission of the "appearance documents" would satisfy the court's order. She also notes that she testified that she relied on Danner's legal advice that she could appear by filing documents with the court.

We review a "district court's finding of guilt after a bench trial to determine whether it is supported by any substantial evidence."[32] In conducting this review, "[e]vidence is sufficient to sustain a conviction if any rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt. . . . [T]his [c]ourt examines the evidence as a whole and construes it in the light most favorable to the verdict."[33]

A conviction for criminal contempt requires both a "contemptuous act and a willful, contumacious, or reckless state of mind."[34] Mrs. Allen does not dispute the existence of a contemptuous act. Thus, her conviction should be sustained if a reasonable juror could have found that the evidence establishes beyond a

---

[32] *United States v. Serna-Villarreal*, 352 F.3d 225, 234 (5th Cir. 2003) (quoting *United States v. Shelton*, 325 F.3d 553, 557 (5th Cir. 2003) (internal quotation marks omitted)).

[33] *Id.*

[34] *United States v. West*, 21 F.3d 607, 608 (5th Cir. 1994) (quoting *United States v. McCargo*, 783 F.2d 507, 510 (5th Cir. 1986) (internal quotation marks omitted)).

reasonable doubt that she acted recklessly. Recklessness involves "a gross deviation from what a reasonable person would do."[35] The evidence as a whole, interpreted in the light most favorable to the verdict, supports the conclusion that Mrs. Allen's actions were, at a minimum, reckless.

Although the orders to show cause did not specify that a personal appearance was required, the second order—of which Mrs. Allen admitted being aware before the receipt of the third order, which forms the basis for her conviction—directed the Allens to appear in person at a specified IRS office location. Mrs. Allen's awareness of the two previous orders at the time she received the third order, also supports the inference that she acted willfully in failing to appear in court. And, Mrs. Allen's continued reliance on the legal advice of Danner, an individual with no legal training, is a gross deviation from what a reasonable person would do under the circumstances.

Moreover, the district court made a credibility determination against Mrs. Allen, concluding that she was aware that her conduct was in violation of the court's order and that she deliberately attempted to avoid appearing in court. Witness credibility and the weight of the evidence are the exclusive province of the fact-finder.[36] The district court's "account of the evidence is plausible in light of the record viewed in its entirety," and under these circumstances "the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."[37] Accordingly, Mrs. Allen's sufficiency of the evidence claim fails.

---

[35] BLACK'S LAW DICTIONARY 1298 (8th ed. 2004).

[36] *United States v. Ford*, 558 F.3d 371, 376 (5th Cir. 2009).

[37] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

**V**

Finally, Mrs. Allen argues that 18 U.S.C. § 401(3) is unconstitutional but acknowledges that we have rejected this argument.[38] Accordingly, this argument is foreclosed.

\*       \*       \*

For the foregoing reasons, we AFFIRM.

---

[38] *See United States v. Martinez*, 686 F.2d 334, 341-42 (5th Cir. 1982); *see also United States v. Landerman*, 109 F.3d 1053, 1068 (5th Cir. 1997) (defining the elements of criminal contempt).