# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2020

Lyle W. Cayce
Clerk

No. 19-30609

United States of America,

*Plaintiff—Appellee*,

*versus*

Thaddeus Beaulieu,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CR-108-1

Before Wiener, Engelhardt, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The United States prosecuted and convicted Thaddeus Beaulieu for felony criminal contempt. The Government concedes that it committed prosecutorial misconduct but asks us to affirm Beaulieu's conviction anyway. We refuse and instead vacate the judgment.

## I.

### A.

In an interview with the FBI, Beaulieu identified various individuals involved in carjackings and bank robberies. One of the criminals was

Beaulieu's cousin and the other was his lifelong friend. Based on that interview, the Government decided to call Beaulieu to testify against the criminals.

On April 25, 2018, Assistant United States Attorney ("AUSA") Michael McMahon called Beaulieu to the stand. But Beaulieu refused to testify and instead invoked his Fifth Amendment privilege against self-incrimination. The district court appointed Cynthia Cimino as Beaulieu's defense counsel under the Criminal Justice Act.

The following day, April 26, the Department of Justice granted Beaulieu immunity from prosecution under 18 U.S.C. §§ 6002–6003. The Supreme Court has held that the "use and derivative use" immunity afforded by these provisions "is coextensive with the scope of the privilege against self-incrimination and is therefore sufficient to compel testimony over a claim of the privilege." *Kastigar v. United States*, 406 U.S. 441, 453 (1972). Nevertheless, when AUSA McMahon called Beaulieu to the witness stand again, Beaulieu still refused to testify:

> THE COURT: All right. Are we ready to proceed?
>
> THE WITNESS: No.
>
> THE COURT: He said "no."
>
> THE WITNESS: I'm not testifying.
>
> THE COURT: All right.
>
> THE WITNESS: I can't state—I can't speak what really happened. It's not going to happen.

After Beaulieu conferred with counsel, the following exchange occurred:

> THE COURT: Mr. Beaulieu, to be clear, is it your intention not to testify today?

THE WITNESS: Yes, ma'am.

THE COURT: All right. Are you aware that you can be held in contempt of court, civilly and/or criminally, and you could be subjected to jail time due to your refusal to testify?

THE WITNESS: Yes, ma'am.

THE COURT: Have you had an opportunity to discuss your . . . intention not to testify with your attorney?

THE WITNESS: Yes, ma'am.

THE COURT: Ms. Cimino, have you had an opportunity to consult and advise your client on the consequences of his decision?

MS. CIMINO: I have spoken with my client about that, yes, ma'am.

THE COURT: I think I covered this earlier, but you are aware, Mr. Beaulieu, that the government has provided you immunity for your testimony?

THE WITNESS: Yes.

THE COURT: And it's still your intention not to testify?

THE WITNESS: Yes.

THE COURT: All right. You're aware that the Court is ordering you to testify?

THE WITNESS: Yes.

THE COURT: And you still maintain your position that you are not going to testify?

THE WITNESS: Yes.

THE COURT: All right. So the Court is going to—I'm going to appoint a prosecutor to prosecute this matter. I'm setting a hearing for May 15th at 10:00 a.m. . . . on Mr. Beaulieu's contempt allegation . . . .

No. 19-30609

B.

The district court appointed AUSA McMahon to prosecute Beaulieu's contempt case. The Government sought a punishment of five years of imprisonment, which meant that Beaulieu was entitled to a trial by jury. *See Bloom v. Illinois*, 391 U.S. 194, 211 (1968). Beaulieu was appointed new defense counsel after Cimino withdrew on the ground that she could be called as a witness at trial.

Beaulieu's new defense counsel filed a pretrial motion seeking to disqualify AUSA McMahon from prosecuting the case on the ground that he was a material witness for the defense. Attached to that motion was an affidavit from Cimino describing AUSA McMahon's interactions with Beaulieu. Cimino averred that on April 25, 2018, the U.S. Attorney's Office offered Beaulieu "a letter which granted him complete immunity to testify at trial, without any exceptions"; subsequently, she said, the Government "took back the original complete immunity letter and provided a second letter of immunity on April 25," which "contained certain exceptions." Cimino claimed that after providing Beaulieu with the second letter, "AUSA Michael McMahon stated that Mr. Beaulieu would be prosecuted to the full extent of the law if his trial testimony differed in any way from an FBI agent's 302 memorandum related to a prior interview of Mr. Beaulieu."[1] Explaining Beaulieu's decision not to testify, Cimino stated: "Due to the exceptions in the second April 25 letter, Mr. Beaulieu invoked his 5th Amendment right and refused to testify." The district court denied the motion to disqualify AUSA McMahon.

---

[1] "The term '302' refers to an FBI form bearing that number, which serves as an official interview memorandum." *United States v. Davis*, --- F.3d ---, 2020 WL 4915627, at *6 (5th Cir. Aug. 21, 2020) (quotation omitted).

Beaulieu's defense counsel also filed a pretrial motion to compel the Government to produce the "original complete immunity letter" referenced in Cimino's affidavit. The Government responded with an affidavit from AUSA Patrice Harris Sullivan. AUSA Sullivan explained that only two immunity letters existed: (1) an informal immunity letter signed by AUSA McMahon, dated April 25, 2018; and (2) a formal immunity letter from the Department of Justice granting Beaulieu immunity pursuant to 18 U.S.C. §§ 6002–6003, dated April 26, 2018. The district court ordered AUSA McMahon to search for and produce all letters offering any type of immunity to Beaulieu on April 25, 2018, and certify his compliance with the order in writing. AUSA McMahon certified that the April 25 and April 26 letters described by AUSA Sullivan were the only immunity letters that existed.

The defense also filed a pretrial motion seeking to recuse the district judge under 28 U.S.C. § 455(a). The motion argued that the judge could not impartially preside over the case, citing comments she made at the show-cause hearing. The district judge denied that motion too.

C.

At Beaulieu's contempt trial, the Government had the burden of showing: (1) that Beaulieu received a reasonably specific court order; (2) he violated the order; and (3) he did so willfully. *See United States v. Allen*, 587 F.3d 246, 255 (5th Cir. 2009) (per curiam). The Government's sole witness was FBI Agent Steven Rayes. He testified about his interview with Beaulieu, which he documented in his 302 memorandum. The Government also introduced into evidence excerpts from the transcript of the trial in which Beaulieu refused to testify.

Beaulieu did not dispute that he violated a reasonably specific court order. Instead, his defense focused on the third element of the Government's burden: willfulness. Cimino was the defense's sole witness at trial. She gave

testimony that differed from the account she gave in her affidavit. At no point in her testimony did she claim that Beaulieu was shown two immunity letters on April 25, one "complete" and one more limited. Instead, she testified that there was one letter dated April 25, signed by AUSA McMahon, and one letter dated April 26, from the Department of Justice.

Cimino testified on direct examination that after Beaulieu received the informal immunity letter on April 25, he was uncomfortable testifying because the letter contained a carveout stating that the "United States may use any statements made in your testimony in a prosecution of you for making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §[§] 1503, *et seq.*), or perjury (18 U.S.C. § 1621)." Cimino further testified that after reviewing a copy of Agent Rayes's 302 memorandum, Beaulieu disputed the accuracy of three facts contained in it: "the kind of vehicle in Paragraph 3 of the report," "a quote that Agent Rayes put in Paragraph 4," and a statement about a phone call in paragraph 5 that "Thaddeus was adamant he never received."

Cimino testified that she asked AUSA McMahon "what would he do if Thaddeus testified a little bit differently from what the agent wrote in the 302," and AUSA McMahon responded that "he would prosecute him to the full extent of the law." Cimino testified that she told Beaulieu what AUSA McMahon had said, and Beaulieu was "afraid" that if he told the truth on the witness stand, AUSA McMahon would prosecute him for deviating from the 302 memorandum. Finally, Cimino testified that even after the Department of Justice provided a formal immunity letter on April 26, she and Beaulieu still had the same concerns because 18 U.S.C. § 6002 contains carveouts for "perjury" and "giving a false statement." She testified that she talked to AUSA McMahon again, and AUSA McMahon reiterated that he would prosecute Beaulieu "to the full extent of the law should he testify with any difference from what was in the agent's 302."

AUSA McMahon then used his cross-examination of Cimino to advance *his own*—that is AUSA McMahon's—version of events. AUSA McMahon asked whether he had "repeatedly" told Cimino that the only testimony he wanted from Beaulieu was an identification of the defendants. Cimino answered that this was "not my recollection of what the conversation was," to which AUSA McMahon responded, "Of course not." Cimino further explained, "When I asked you specifically if he testified any differently at all from what was in the agent's 302, you unequivocally told me that you would prosecute him to the full extent of the law, and that is what I communicated to my client." AUSA McMahon disputed Cimino's testimony, asking, "I never said any discrepancy, did I?" Cimino answered, "Yes, you did," to which AUSA McMahon responded argumentatively, "Do you think I'm as dumb as I look? You don't think I know the law of perjury?" Cimino later reiterated that "when I asked you what happens if he testifies a little bit differently in a minor way from what the agent wrote in the 302, . . . you told me 'I will prosecute him to the fullest extent of the law.'" Again taking the opportunity to testify as a fact witness, AUSA McMahon responded argumentatively: "I am telling you that's not true."

During closing arguments, AUSA McMahon made numerous statements that the Government now concedes amounted to "prosecutorial misconduct." First, the Government admits that AUSA McMahon made arguments based on facts not in evidence, claiming that: (1) Beaulieu refused to testify because he feared being called a "rat," even though no evidence was introduced to establish that motive; and (2) AUSA McMahon never said he would prosecute Beaulieu, even though no witness contradicted Cimino's account of the events. Second, the Government admits that AUSA McMahon made inappropriate statements encouraging the jury to consider how the district judge might react to its verdict. Specifically, he argued that

doing anything other than finding Beaulieu guilty would disrespect the judge and the court.

The jury found Beaulieu guilty of criminal contempt. Beaulieu timely appealed.

## II.

We begin with Beaulieu's argument that Chief Judge Nannette Jolivette Brown should have recused under 28 U.S.C. § 455(a). The denial of a motion to recuse under § 455(a) is reviewed for abuse of discretion. *See Allen*, 587 F.3d at 251.

Section 455(a) disqualifies a judge from a proceeding in which her impartiality might reasonably be questioned. Beaulieu's brief raises only a perfunctory, conclusory argument regarding § 455(a), with no citations to the record. We therefore hold the argument is forfeited on appeal. *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019), *cert. denied*, No. 19-1033, 2020 WL 3146702 (U.S. June 15, 2020).

Beaulieu raises a separate recusal argument under Federal Rule of Criminal Procedure 42(a)(3). That rule states: "If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents." Our review is for plain error. *See* Fed. R. Crim. P. 52(b).[2]

---

[2] Beaulieu says that he did not forfeit this argument in the district court and, therefore, the abuse of discretion standard applies because: (1) defense counsel stated in a motion for a continuance that he needed time to investigate the possibility that Rule 42 required recusal; and (2) Beaulieu's recusal motion contained a sentence and footnote stating that he was also moving for recusal under the Due Process Clause of the U.S. Constitution. Neither of those arguments presented the district court with an "opportunity to consider and resolve" whether Rule 42 required recusal. *Puckett v. United States*, 556

No. 19-30609

We find none. Rule 42(a)(3) does not apply to this case because the particular conduct that led to Beaulieu's contempt charge was his refusal to testify, rather than an instance of "disrespect toward or criticism of" Chief Judge Brown. FED. R. CRIM. P. 42(a)(3). True, at the show-cause hearing, the district court expressed "concern . . . that Mr. Beaulieu thinks this is a light [matter], that Mr. Beaulieu is mocking the Court, [and] that he thinks he can come in here and manipulate the Court." It's also true that, in its post-trial analysis of Beaulieu's objections to the Pre-Sentence Report, the district court wrote: "Beaulieu displayed disrespect toward the judicial process and exhibited a cavalier demeanor regarding the gravity of the offense." But these statements do not change the fact that the United States prosecuted Beaulieu for refusing to testify after receiving immunity under 18 U.S.C. §§ 6002–6003, rather than showing "disrespect toward or criticism of a judge." FED. R. CRIM. P. 42(a)(3). Because Rule 42(a)(3) does not apply, Beaulieu has failed to show an error.

### III.

Beaulieu argues that his conviction should be vacated because AUSA McMahon made numerous inappropriate remarks at trial. To prevail on such a claim, Beaulieu must make two showings. First, he must show that "the prosecutor made an improper remark." *United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007) (quoting *United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004)). And second, he must show prejudice. *See ibid.* We hold Beaulieu made both showings.

---

U.S. 129, 134 (2009). Beaulieu therefore forfeited the argument in the district court, and our review is for plain error.

## A.

The Government concedes that AUSA McMahon made numerous improper remarks. And that concession is well-taken. "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *United States v. Young*, 470 U.S. 1, 7 (1985). But there is no gray zone here. AUSA McMahon repeatedly expressed his "personal opinion on the merits of the case [and] the credibility of the witnesses." *United States v. Bennett*, 874 F.3d 236, 251 (5th Cir. 2017) (quoting *United States v. Boyd*, 773 F.3d 637, 645 (5th Cir. 2014)). He repeatedly made arguments at closing based on "evidence not presented at trial." *Id.* at 254; *see also United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012) (en banc). And he closed by telling the jury that it must convict Beaulieu not because of the facts and law—but because to rule otherwise would "disrespect or dishonor a chief federal district court judge." *See Young*, 470 U.S. at 18. These are textbook examples of prosecutorial misconduct.

## B.

Even so, "[w]e do not lightly make the decision to overturn a criminal conviction on the basis of a prosecutor's remarks alone." *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). Even if a defendant shows that the prosecutor's remarks "were undesirable or even universally condemned," that alone is not sufficient to warrant the vacatur of a conviction. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted). The defendant must also show that the inappropriate comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Ibid.* (quotation omitted).

The "determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *United States v. Mendoza*, 522 F.3d 482, 492 (5th Cir. 2008) (quotation omitted). In

answering that question, we may consider "(1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt." *Ibid.* (quotation omitted).

The Government concedes the first element. And again, this concession is wise. The magnitude of AUSA McMahon's misconduct, within the specific context of this trial, was overwhelming. From the beginning of the opening statement to the end of the closing argument, the trial lasted from 12:07 p.m. to 4:27 p.m., including a 77-minute lunch break. The jury heard from only two witnesses and received only four exhibits. The prosecution's initial closing argument and rebuttal each lasted less than 10 minutes. AUSA McMahon's inappropriate remarks touched almost every part of these proceedings. And the district judge did little to intervene or offer cautionary instructions. Therefore, Beaulieu easily satisfies the first two parts of the prejudice inquiry.

That leaves only the third part of the prejudice showing: the strength of the evidence of Beaulieu's guilt. *See Mendoza*, 522 F.3d at 492. Beaulieu obviously received a specific order to testify, and he obviously violated that order. So there is strong evidence of the first two elements of criminal contempt. *See Allen*, 587 F.3d at 255. The crux of the dispute at trial, however, was the third element—whether Beaulieu *willfully* violated the order to testify. And on that element, it's impossible to separate AUSA McMahon's misconduct from the other evidence against Beaulieu. In fact, we cannot separate AUSA McMahon's *existence* as the Government's prosecutor from the other evidence against Beaulieu. *See* Model Rules of Pro. Conduct r. 3.7(a) (Am. Bar Ass'n 2020) (generally prohibiting a lawyer from "act[ing] as advocate at a trial in which the lawyer is likely to be a necessary witness"). After all, if AUSA McMahon did in fact threaten to prosecute Beaulieu for correcting factual errors in the 302

memorandum, then the jury could reasonably determine that Beaulieu's refusal to testify in response to that threat was an understandable and good-faith effort to avoid perjury, not a willful violation of a court order. *See Fed. Power Comm'n v. Metro. Edison Co.*, 304 U.S. 375, 387 (1938) (requirement in a criminal contempt statute that the "fail[ure] or refus[al] to attend and testify . . . be 'willful' fully protects one whose refusal is made in good faith"); *Allen*, 587 F.3d at 255 (at a minimum, willful "means 'a gross deviation from what a reasonable person would do'" (citation omitted)). And the Government's only evidence in that regard was the testimony of AUSA McMahon—which he offered (inappropriately) in the form of prosecutorial "argument" from the Government's counsel table. *Cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 805 (1987). We therefore hold that Beaulieu has shown a constitutional error, and he is entitled to relief under any standard of review.[3]

---

[3] The Government says we must apply plain-error review. *See* Fed. R. Crim. P. 52(b). It's true that we must determine whether Beaulieu preserved below each allegation of prosecutorial misconduct, and we must review the preserved allegations for abuse of discretion and the unpreserved ones for plain error. *See, e.g.*, *Bennett*, 874 F.3d at 247. Beaulieu repeatedly objected to AUSA McMahon's role as witness-*cum*-prosecutor. And Beaulieu preserved his objections in both pre-trial motions and in mid-trial objections. As to the preserved objections, Beaulieu has shown an abuse of discretion. Beaulieu failed to object, however, to at least some portions of AUSA McMahon's improper closing "argument." As to whatever objections Beaulieu forfeited, he is entitled to relief under plain-error review. *See United States v. Sanchez-Hernandez*, 931 F.3d 408, 410 (5th Cir. 2019). We've already held the Government committed an error. The Government does not dispute that the error is plain and obvious. And we've held that it affected Beaulieu's substantial rights—that is, he was prejudiced by AUSA McMahon's misconduct. With those holdings in place, "the government concedes that this Court should exercise its discretion to remedy the error, vacate the conviction, and remand for further proceedings." Red Br. 35.

No. 19-30609

\*        \*        \*

"The prosecutor occupies a distinctive position in the criminal justice system: he is the hammer that sparks fire on the anvil of justice." *United States v. Diaz-Carreon*, 915 F.2d 951, 955 (5th Cir. 1990). He represents not "an ordinary party to a controversy," but a "sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935). His duty is not to "win a case," but to ensure "that justice shall be done." *Ibid.* While he may "strike hard blows," he "is not at liberty to strike foul ones." *Ibid.* "It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Ibid.*

The proceeding below was obviously contentious, with numerous accusations of dishonesty and bad faith. Regardless of the circumstances, a prosecutor must always adhere to the highest ethical standards of the legal profession. The integrity of our criminal-justice system depends on it. Because the Government's conduct in this case fell short of those standards, Beaulieu's conviction is hereby VACATED.