# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2026

Lyle W. Cayce
Clerk

————————

No. 25-20146

————————

United States of America, *ex rel*, Christopher Frey,

*Plaintiff—Appellant*,

*versus*

Health Management Systems, Incorporated; Cotiviti, Incorporated; Performant Recovery, Incorporated; CGI Federal, Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2024

———————————————————————

Before Clement, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

The False Claims Act ("FCA") authorizes private relators to pursue treble damages and penalties against defendants on behalf of the government, even when the government declines to pursue the claims itself. 31 U.S.C. § 3729. To carefully circumscribe the contours of that power, Congress crafted a provision that awards prevailing defendants attorneys' fees where

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-20146

the relator's suit was "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). In this case, Relator-Appellant Christopher Frey appeals the district court's order awarding attorneys' fees to Defendants-Appellees[1] Health Management Systems, Inc. ("HMS"), Cotiviti, Inc., and CGI Federal, Inc., on the basis that Frey's *qui tam* suit was frivolous. Having concluded that there is no abuse of discretion in the decision below, we AFFIRM.

I

Christopher Frey is a former HMS employee, where he worked from September 2006 until May 2013, after HMS let him go as part of a reduction-in-force. *See Frey v. HHS*, 920 F.3d 319, 323, 331 (5th Cir. 2019). During his time with HMS, Frey managed sales and relationships with "Medicaid agency customers in his territories" as a function of HMS's business to recover from liable third parties improperly paid Medicaid funds. He did not manage or oversee any of HMS's Medicare-related services.

After his termination, Frey launched a series of lawsuits against HMS,[2] including two other *qui tam* actions in the Northern District of Texas.[3] Frey has lost *every* lawsuit that he has brought against HMS. Unfazed by his lack of success in his litigation campaign against HMS, Frey pressed ahead and filed this FCA action while his other two lawsuits were pending in

---

[1] "Defendants-Appellees" refers to HMS, Cotiviti, and CGI Federal. Defendant-appellee Performant did not apply for attorneys' fees in the district court below and is therefore not subject to the outcome in the instant appeal.

[2] *See Frey*, 920 F.3d at 331; *Frey v. Health Mgmt. Sys., Inc.*, 2020 WL 4365380, at *5 (N.Y. Sup. Ct. July 2020, 2020), *aff'd*, 151 N.Y.S.3d 879 (N.Y. App. Div. 2021); *United States ex rel. Frey v. Health Mgmt. Sys., Inc.*, 2024 WL 4536461, at *15 (N.D. Tex. Oct. 18, 2024), *appeal filed*, No. 24-11018 (5th Cir. Nov. 18, 2024).

[3] *United States ex rel. Frey v. Health Mgmt. Sys.*, 2021 WL 4502275, at *5, *7 (N.D. Tex. Oct. 1, 2021) (consolidating suits that "largely mirro[ed]" each other).

the Northern District of Texas. In this action, he alleged FCA violations and conspiracy to violate the FCA. He advanced two theories of liability: one related to a 2014 settlement between the Centers for Medicare and Medicaid Services ("CMS") and certain hospitals, and the other related to purportedly unearned contingency fees. Before we address each theory, context is needed.

The Department of Health and Human Services ("HHS") administers Medicare's fee-for-service program, which reimburses valid claims submitted by healthcare providers for covered services provided to Medicare patients, through CMS.

To bridge the gap and reduce the amount of Medicare funds lost, CMS contracts with "recovery audit contractors" to pinpoint circumstances where the government overpaid and to recoup the overpayments. 42 U.S.C. § 1395ddd(h)(1). CMS pays the contractors on a contingency basis for the overpayments they collect. *Id.* In this case, Defendants-Appellees are Medicare recovery audit contractors or owners of such contractors.

Now, back to Relator-Appellant's theories.

*Hospital-Settlement Claims Theory.* In 2014, CMS announced that it had settled a dispute with certain hospitals over their claims for reimbursement. CMS agreed the hospitals could keep nearly 70% of the amounts at issue in exchange for the hospitals dropping their administrative appeals of CMS denial decisions. Later, CMS sent letters to recovery audit contractors, including Defendants-Appellees, suggesting they would be entitled only "to the contract contingency fee on the settled amounts"—or about 30% of the original claim amounts (hereinafter, "hospital-settlement claims").

Multiple Defendants-Appellees responded publicly, contending that they did not have an obligation to return the fees. Drawing on their refusal to

return such fees, Frey alleged their actions violated the FCA. These claims are premised on public announcements about the settlement, a public 10-K form submitted to the SEC, and publicly available letters obtained from CMS through FOIA.

*Unearned-Fees Theory.* Frey also advanced allegations that the recovery audit contractors violated the FCA by improperly collecting and retaining various contingency fees (hereinafter, "unearned-fees" theory).

The government reviewed Frey's claims and, after interviewing him, declined to intervene in the case. Frey proceeded.

Defendants-Appellees then moved to dismiss Frey's first amended complaint. They based their motion on the position that Frey's claims triggered the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), failed to meet the pleading requirements under Federal Rule of Civil Procedure 8(a) and 9(b), failed to plead any facts to support scienter, and failed to allege conspiracy. CGI Federal argued that Frey had failed to name the proper party in his suit, and Frey filed a second amended complaint that substituted CGI Federal Inc. Frey made no further changes to his complaint.

The magistrate judge issued a thorough report and recommendation. She reasoned that, as to Frey's hospital-settlement claims, the FCA's public disclosure bar required dismissal. Next, she found that, as to Frey's unearned-fees theory, Frey failed to "state with particularity" the alleged fraud in a manner that comports with Rule 9(b). Noting that "Frey is a serial litigant," the magistrate judge ultimately recommended that the second amended complaint be dismissed with prejudice.

The district court adopted the report and recommendation in full and entered final judgment. Frey did not appeal that decision.

No. 25-20146

After securing final judgment in their favor, Defendants-Appellees moved for attorneys' fees under 31 U.S.C. § 3730(d)(4), and the district court approved a bifurcated procedure for determining attorneys' fees. Defendants-Appellees moved for fees on each statutory basis set forth in § 3730(d)(4).

The magistrate judge issued a report and recommendation that Defendants-Appellees were entitled to reasonable attorneys' fees because Frey's claims were clearly frivolous. The district court adopted it. Afterward, the parties met and conferred but could not agree on the amount. Defendants-Appellees submitted fee applications. Those amounts individually included $236,930.50, $315,352.10, and $328,196.62. Frey claimed these fees were unreasonable, that he lacked the financial wherewithal to pay them, and could pay "no more than $5,000." The magistrate judge later ordered an indigency hearing.

At the hearing, Frey admitted that he has assets and income in recent years, including (1) real property in Idaho, which he sold for around $200,000; (2) a condominium in Corpus Christi, which he sold for $225,000; (3) a beachside condominium in Los Cabos, Mexico; and (4) a 4.5% limited partnership interest in a marina and 25-acres of lakefront property on Lake Travis in Austin. He had previously stated that he had no income prior to 2019, other than his $1.33 million of a $2.25 million settlement. He also admitted that he had failed to disclose the full extent of his assets to his now-ex-wife during their divorce proceedings.

Questioning his credibility and transparency, the magistrate judge issued a supplemental report recommending that the district court award $479,656.22—the original recommended amount—in fees and expenses. The district court adopted the report in full.

Frey timely appealed.

## II

We review a district court's award of attorneys' fees for abuse of discretion. *United States ex rel. Longhi v. United States*, 575 F.3d 458, 475 (5th Cir. 2009). Under that broad and deferential standard of review, "a district court's decision to award attorneys' fees will not be disturbed unless the award is based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." *United States ex rel. Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006) (per curiam) (unpublished) (citing *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006)).

## III

The FCA provides prevailing defendants in *qui tam* actions reasonable attorneys' fees if the district court "finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). Because the statutory text is written in the disjunctive, any of these conditions is sufficient to support an award of attorneys' fees. *Bain*, 208 F. App'x at 283.

Here, the district court concluded that Frey's claims were clearly frivolous, and therefore it did not need to decide whether they were also "clearly vexatious" or "brought for purposes of harassment." 31 U.S.C. § 3730(d)(4). Picking up where they left off with their argument below, Defendants-Appellees press these independent grounds as alternative bases for affirmance on appeal.

Two issues exist on appeal. We address each in turn.

## A

*First*, as a threshold, we must determine whether the district court properly exercised its discretion in awarding attorneys' fees to Defendants-

No. 25-20146

Appellees under 31 U.S.C. § 3730(d)(4) because Frey's claims were clearly frivolous. Thus, we must first assess whether attorneys' fees were *justified*.

To begin, we start with the district court's conclusion that Frey's lawsuit against Defendants-Appellees was "clearly frivolous." "A claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension." *Bain*, 208 F. App'x at 283 (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)). As we have held before, a claim may be frivolous "[u]nder the proper circumstances" if it is infected with a "single defect." *Bain*, 208 F. App'x at 283; *see also Martel v. Maxxam Inc.*, 2000 WL 329354, at *2 (5th Cir. 2000) (per curiam) (unpublished) (upholding ruling on frivolousness exclusively on the basis that the relator "knew that his suit was based on publicly disclosed information of which he was not the original source").

With the stage now set, we must now evaluate the district court's conclusions and assess whether Frey's liability theories are indeed frivolous.

1

As to Frey's hospital-settlement claims, the FCA's public disclosure bar requires dismissal of "an action or claim"—"unless opposed by the [g]overnment"—if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). Here, Frey admitted that his hospital-settlement claims were premised wholly on publicly disclosed information. But that is not the end of the matter. Under that same provision, dismissal is required unless "the person bringing the action is an *original source* of the information." 31 U.S.C. § 3730(e)(4)(A) (emphasis added).

And that is where the rubber meets the road. Frey puts forth, as a conclusory matter, that he was "an original source with respect to the Defendants' fraud in failing to repay the unearned contingency fees

demanded by the [g]overnment." Not so, according to Defendants-Appellees, when consulting the record: "Cotiviti publicly said in its 2017 Form 10-K SEC filing that it 'vigorously dispute[d] any obligation to repay contingency fees related to claims settled as part of CMS's hospital settlement initiative.'" Moreover, Frey cited the Form 10-K in his second amended complaint, thereby confirming his knowledge of its existence.

The district court did not buy Frey's original-source characterization. It found that, while Frey pressed that he "presented a colorable legal argument," that argument was "unsupported by the record." His theory was ultimately mugged by reality, as the district court determined, because "Frey knew what he needed to establish for a successful claim and wholly failed."

To support its decision, the district court relied on our decision in *Bain*. In *Bain*, we affirmed the district court's granting of attorneys' fees under 31 U.S.C. § 3730(d)(4) because the relator's lawsuit was frivolous. 208 F. App'x at 283. We concluded that the relator's "overwhelming failure" to "satisfy pleading requirements"—even after he was put on notice of those inadequacies before amending his complaint—justified awarding fees. *Bain*, 208 F. App'x at 284. Frey takes a shot at distinguishing *Bain* but misses the mark. The district court ably analogized *Bain* to conclude that, while Frey was given an opportunity to amend his pleadings twice, he continually "failed to establish himself as an original source." We find that *Bain* squarely supports the decision below.

At bottom, Frey failed to properly allege that he was the "original source" of the information underlying his hospital-settlement claims, so the FCA's public disclosure bar foreclosed his claims. Given that "single defect," Frey had "no reasonable chance of success" on the merits. *Id.* at 283, 284; *Martel*, 2000 WL 329354, at *2. Thus, we conclude that the district

court was within its proper discretion to hold that Frey's lawsuit was "clearly frivolous" and that Defendants-Appellees are entitled to attorneys' fees.

2

As to Frey's unearned-fees theory, Rule 9(b) subjects the allegations to heightened pleadings requirements. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). Under Rule 9(b), Frey, as an FCA relator, must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Tucked within that procedural rule is the unflagging obligation that Frey must allege the "who, what, when, where, and how" of the supposed fraud, *Willard*, 336 F.3d at 384, and "state with particularity what representations each defendant made." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

The district court was correct: this issue "is not a close call." Instead of specifically alleging how *each* defendant committed fraud, Frey "lump[ed] all defendants together" in his pleadings. That is undisputed on appeal. He also failed to "provide even a representative example of an individual involved in the fraudulent scheme." That, too, is undisputed. Rather, he averred "wholly generalized allegations" devoid of specificity.

Frey's pleading problems are compounded because he lacked *personal* knowledge about the purported fraud by Defendants-Appellees. In fact, he never worked for HMS's *Medicare* audit and recovery sector but instead managed sales and relationships with *Medicaid* agency customers as part of HMS's business to recover improperly paid Medicaid funds from liable third parties. In other words, he never managed or oversaw HMS's Medicare-related services. Moreover, his claims extend beyond the termination of his employment with HMS, which cuts against any plausible inference as to his personal knowledge of the alleged fraud. At most, his claims were conclusory

allegations as to "how" a fraudulent "scheme *might* work," with no "details regarding how the alleged scheme was in fact carried out." Thus, as the district court rightly concluded, Frey's claims were "pure speculation."

Yet pure speculation defies Rule 9(b)'s exacting demands. And such pure speculation here plagues Frey's claims, which cry out for specificity.

Reviewed cumulatively, the district court's determination that Frey's unearned-fees claims were "clearly frivolous" and that Defendants-Appellees were entitled to attorneys' fees was rightly within its discretion. Because the district court did not abuse its discretion in finding that attorneys' fees were justified on the basis that Frey's claims were frivolous, we need not address Defendants-Appellees alternative grounds for relief.

B

*Second*, we must determine whether the district court properly exercised its discretion in declining to further reduce the amount of the awards beyond the court's initial lodestar reduction because Frey failed to present credible evidence that he is indigent and therefore cannot pay them. Thus, we must assess whether the *amount* of attorneys' fees was proper.

Neither the Supreme Court nor our court has "intimated that a party's financial condition is a proper factor to consider in determining *whether* to award attorneys' fees against that party." *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990) (citations omitted). Yet "the financial condition of a nonprevailing plaintiff . . . is a factor that, although not controlling, a court should consider when fixing the amount of such an award." *Id.* at 239. To establish indigency, Frey must put forth "adequately detailed and comprehensive affidavits or similar 'evidence.'" *DeLeon v. City of Haltom City*, 113 F. App'x 577, 579 n.1 (5th Cir. 2004) (per curiam) (citation omitted). The parties debate whether he carried that burden here.

No. 25-20146

Frey argues that the district court abused its discretion by inadequately considering his indigent financial condition, finding that his reason for not disclosing certain income in his divorce proceedings was not credible, questioning his definition of income, and misrepresenting facts. But none of these arguments contain citations to the record.

To his discredit, Frey's brief on appeal "raises only a perfunctory, conclusory argument . . . with no citations to the record." *United States v. Beaulieu*, 973 F.3d 354, 359 (5th Cir. 2020). By marked contrast, his challenge to whether attorneys' fees were justified was well-supported by record citations on appeal. "Judges are not pigs, hunting for truffles buried in the record." *Albrechsten v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (Easterbrook, J.) (quotation omitted); *see also United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam) (same). We therefore hold that Frey's argument challenging the amount of attorneys' fees is forfeited on appeal. *Beaulieu*, 973 F.3d at 359.

Forfeiture aside, Frey's brief on appeal would still not fare much better on the merits when one reads the record. The magistrate judge found that Frey "lacked credibility and transparency." That finding was adopted by the district court. And that finding was firmly supported by the record, which shows a glaring credibility issue as to Frey's financial situation. When consulting the facts and the law in tandem, we hold there is no abuse of discretion in the district court's decision to adopt the recommendation of attorneys' fees in the amount of $479,656.22—an amount that reflects lodestar-related *reductions* for the Defendants-Appellees' applications to their proposed fee award amounts. *See Longhi*, 575 F.3d at 475.

IV

Because we conclude there is no abuse of discretion, we AFFIRM.